Kenneth A. BIRDSONG, and Delta R. Birdsong, Appellants,

v.

Raymond CHRISTIANS, and Darrell Kidd, d/b/a Darrell Kidd Extermination and Pest Control, Respondents.

No. 22870.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 10, 1999.

David J. Riesenmy, Joplin, for Appellant.

C. Bradley Tuck, Joplin, for Respondent Kidd.

Joe Crosthwait, Joplin, for Respondent Christians.

ROBERT S. BARNEY, Judge.

Kenneth A. Birdsong and Delta R. Birdsong (collectively "Appellants") filed a "First Amended Petition for Damages" against Raymond Christians ("Christians") and Darrell Kidd ("Kidd"), d/b/a "Darrell Kidd Extermination and Pest Control," (collectively "Respondents"). In the first count of their amended petition, Appellants alleged that Christians fraudulently misrepresented the condition of a house that Appellants purchased from Christians. In the second count of their amended petition, Appellants claimed negligence on the part of Kidd regarding an improperly performed termite inspection on the house in question.

On August 28, 1998, Kidd filed motions for summary judgment as to the count against him in Appellant's first amended petition and as to Christians' cross-claim against him. The trial court sustained Kidd's summary judgment motions in a final judgment filed January 25, 1999, finding, *inter alia,* that "the pleadings, depositions, answers to interrogatories and affidavits on file show that there is no issue as to any material fact" as to both motions, and that Kidd was entitled to summary judgment as a matter of law.

The docket reflects that subsequently, on October 20, 1998, Christians filed a motion for summary judgment as to the count against him in Appellant's first amended petition. The trial court sustained Christians' motion for summary judgment, again finding that "the pleadings, depositions, answers to interrogatories and affidavits on file show that there is no issue as to any material fact" and that Christians was entitled to summary judgment as a matter of law.[1] Appellants appeal the trial court's awards of summary judgment as to the respective Respondents.

*STANDARD OF REVIEW.*

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was en-

---

1. The trial court's judgment sustaining Christians' motion for summary judgment is dated January 22, 1999, but bears no file stamp.

tered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "We accord the non-movant the benefit of all reasonable inferences from the record." *Id.* Since the criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially, our review is essentially *de novo. Id.* A genuine issue exists, as to one of the material facts underlying the moving party's right to summary judgment, where the record contains competent evidence that demonstrates two plausible, but contradictory, accounts of the essential fact. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 382. Evidence in the record presenting a genuine issue of material fact defeats a movant's right to summary judgment. *Id.* A genuine issue "implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities." *Id.* at 378. The dispute must not be simply argumentative, frivolous or imaginary. *Id.* at 382. The requirements of Rule 74.04 govern motions for summary judgment in Missouri.[2] Rule 74.04(c)(1) provides the following:

> Motions for summary judgment shall state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts. Each motion for summary judgment shall have attached thereto a separate legal memorandum explaining why summary judgment should be granted and affidavits not previously filed that are relied on in the motion.

Rule 74.04(c)(1). Rule 74.04(c)(2), which outlines the procedure to be followed by an adverse party after a motion for summary judgment is filed, states as follows:

Within thirty days after a motion for summary judgment is served, the adverse party shall serve a response on all parties, and, if the adverse party is relying on affidavits, the response shall have attached thereto affidavits not previously filed. The response shall admit or deny each of movant's factual statements in numbered paragraphs that correspond to movant's numbered paragraphs, shall state the reason for each denial, shall set out each additional material fact that remains in dispute, and shall support each factual statement asserted in the response with specific references to where each such fact appears in the pleadings, discovery or affidavits. The response may also have attached thereto a legal memorandum explaining why summary judgment cannot be granted. If the party opposing a motion for summary judgment has not had sufficient time to conduct discovery on the issues to be decided in the motion for summary judgment, such party shall file an affidavit describing the additional discovery needed in order to respond to the motion for summary judgment and the efforts previously made to obtain such discovery. For good cause shown, the court may continue the motion for summary judgment for a reasonable time to allow the party to complete such discovery.

Rule 74.04(c)(2). Additionally, "[w]hen a moving party makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to a judgment as a matter of law, the adverse party is not permitted to rest upon the mere allegations or denials of his pleadings." *McAninch v. Robinson*, 942 S.W.2d 452, 456 (Mo.App.1997)(citing *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381). Rule 74.04(e) provides, in part, that a party responding to a properly supported motion for summary judgment must respond in the manner set forth in the rule, and if the party fails to do so,

2. All Rule references are to Missouri Court Rules (1998).

"summary judgment, if appropriate, shall be entered against that party." *Southard,* 904 S.W.2d at 530 (Mo.App.1995); *see ITT Commercial Fin. Corp.,* 854 S.W.2d at 380. Further, "[f]ailure to respond to the factual allegations in [a] defendant's motion for summary judgment is an admission of those facts." *Williams v. Thomas,* 961 S.W.2d 869, 872 (Mo.App.1998). However, "[t]he key to a summary judgment is the undisputed right to a judgment as a matter of law; not simply the absence of a fact question." *Southard v. Buccaneer Homes Corp.,* 904 S.W.2d 525, 530 (Mo.App.1995). Therefore, if, as a matter of law, the judgment is sustainable on any theory, even one entirely different than that posited at trial, it should be sustained. *See ITT Commercial Fin. Corp.,* 854 S.W.2d at 387–88; *McCready v. Southard,* 671 S.W.2d 385, 387 (Mo.App.1984); *see also Cullom v. Crittenton,* 959 S.W.2d 915, 917 (Mo.App.1998).

### DISCUSSION AND DECISION.

#### I.

As this Court understands Appellants' contentions, in May of 1993, Appellants had a complete inspection made of the house. At that point they found severe termite infestation, severe water rot to the exterior walls of the house, that the roof had leaked, that the roof had unsatisfactory repairs made to it, and that what Appellants thought was stucco was instead an inferior product consisting of pressed wood chips and vinyl. Further, Appellants have experienced flooding in their basement since moving into the house.

■ In their first point on appeal, Appellants claim the trial court erred in granting summary judgment in favor of Kidd as to their claim of negligence in that "termites were present in the home at the time of the inspection by ... Kidd and

that they were in fact visible to the naked eye at the time of the inspection...." [3]

The record shows that on or about September 3, 1992, Darrel Kidd inspected the house in question and stated in his inspection report "[n]o active termites found in the structure at this time based on careful visual inspection" and that the house did "not appear to have structural damage with a visual inspection."

■ Kidd's motion for summary judgment alleged that there existed no disputed material facts in the lawsuit. In order for Kidd to be entitled to summary judgment, he had to establish one of the following:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. To support his motion for summary judgment, Kidd sought to show that there was no factual dispute concerning his actions and that those actions did not constitute a breach of his duty. To accomplish this, Kidd attached his affidavit which averred that he "made a complete visual inspection of the entire home, as well as sounding the wood structures on both the interior and exterior base of the home" and that "[a]t no time did [he] find any visible evidence of termite infestation, termite tubes or mud runs located anywhere on the subject property." Kidd also attached a copy of the inspection report for the house, noted *supra.* Additionally, Kidd attached the deposition testimony of

**3.** "The elements of a cause of action for negligence are: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) breach of that duty, and (3) an injury to plaintiff which was proximately caused by the defendant's breach." *Jones v. Ames,* 901 S.W.2d 160, 162 (Mo.App.1995).

Darryl Sanders, Ph.D., an expert in "urban entomology." Dr. Sanders testified, in essence, that if Kidd examined the house in the manner that Kidd claimed he did, Dr. Sanders could not testify "within a reasonable degree of certainty that [Kidd] carelessly and negligently performed this examination."

In responding to Kidd's motion for summary judgment, Appellants submitted the deposition of Appellant Delta Birdsong. Mrs. Birdsong testified in her deposition that she went though the house "before [she and her husband] bought it." She testified that, at that time, her daughter noticed termite "mud runs" in the south window in the basement and pointed them out to her but that she didn't know what they were. Mrs. Birdsong also testified that her son asked her what the mud runs were, that she replied "probably wood glue," and that Christians, the owner, said that she "was probably right." Mrs. Birdsong also signed an affidavit stating that "at the time of purchase of the house . . . there were visible mud runs in the window well of the basement and along the ledge in the main level garage." Further, Appellants attached the affidavit of Jeff Childers who averred that he had been in the pest control business for 17 years, that he regularly conducted termite inspections as part of real estate transactions between buyers and sellers, and that, after numerous inspections of the property in question, his professional opinion was that "if a careful, visual and sounding inspection occurred in September, 1992, pursuant to the standards of the industry, active termite infestation of the premises should have been found."

■ We reiterate that a genuine issue exists, as to one of the material facts underlying the moving party's right to summary judgment, where the record contains competent evidence that demonstrates two plausible, but contradictory, accounts of the essential fact. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382. It is clear to this Court that a disputed material fact exists, namely, whether or not Kidd actually and adequately performed the visual and sounding inspection as he claims. Kidd claims Appellants' response to his motion for summary judgment was inadequate in that it failed to state any specific acts of negligence against him such as "failure to inspect crawl spaces" and "failure to remove boards where wood comes in contact with ground." Appellant's claim, as this Court understands it, is simply that Kidd did not see the openly visible termite evidence testified to by Mrs. Birdsong. The affidavit of Mrs. Birdsong, stating that she and her family, lay-persons all, saw evidence of termites before the inspection was performed is, standing alone, enough circumstantial evidence of the claimed carelessness and lack of thoroughness to create a question to be decided by a trier-of-fact. "Where the record reasonably supports any inference other than those necessary to support a judgment for the movant, a genuine issue of material fact exists and the movant's motion for summary judgment should be overruled." *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 761 (Mo. banc 1996). "It is not the truth of these facts which matter, but whether the facts are disputed." *Rogers v. Frank C. Mitchell Co.*, 908 S.W.2d 387, 389 (Mo.App.1995). "Questions of fact should be presented to the jury." *Id.* Appellants' first point is sustained.

## II.

In their second point on appeal, Appellants claim that the trial court erred in granting summary judgment in favor of Christians as to their claim against Christians for fraudulently misrepresenting the condition of the house that they purchased from him in September 1992.[4] In their

---

4. Though the parties agree that the house was "sold" in September of 1992, the record does not reflect the exact date of the sale of the house. Appellant's brief states only that "Christians sold his home to [Appellants] in September of 1992." Respondent Kidd

first amended petition, Appellants claimed that Christians made the following representations in a "Sellers' Disclosure Statement," that the statement proved to be untrue, and that Christians did so with the intention of inducing Appellants to purchase the house:

    a. That there were no roof leaks and that no repairs had been made to the roof;

    b. That there had not been structural problems with the house;

    c. That the exterior construction of the house was part "stucco"; and

    d. That there had been no water problems with the house.

In his motion for summary judgment Christians asserted that discovery had "revealed no evidence that ... Christians knew that the above representations were false, nor is there evidence that they in fact were false." He also maintained that the statute of limitations had expired on the claim.

Appellants maintain on appeal that the trial court erred in its award of summary judgment because: 1) circumstantial evidence was submitted to the court showing the elements of Christians' knowledge and falsity; 2) knowledge and falsity may be shown by circumstantial evidence; 3) the burden of moving forward with an affirmative defense rests on the Defendant and may be deemed abandoned; 4) Plaintiff's lawsuit was filed within the allowable statute of limitations; 5) that Defendant's actions in concealing damage to the house tolled the statute of limitations; and 6) since the running of the statute of limitations depends upon when the plaintiffs discovered or by reasonable diligence could have discovered the fraud, a question of fact was presented.

■■■■ We initially observe that the elements of fraud are:

(1) a representation;

(2) its falsity;

(3) its materiality;

(4) the speaker's knowledge of the falsity or his ignorance of the truth;

(5) the speaker's intent that his representation should be acted upon by the hearer and in the manner reasonably contemplated;

(6) the hearer's ignorance of the falsity of the representation;

(7) the hearer's reliance on the truth of the representation;

(8) the hearer's right to rely thereon;

(9) the hearer's consequent and proximately caused injury.

*Kratky v. Musil*, 969 S.W.2d 371, 375–76 (Mo.App.1998). There "need not be an affirmative representation for actionable fraud to exist: if a party has a duty to speak, silence can amount to misrepresentation." *Martin v. McNeill*, 957 S.W.2d 360, 363 (Mo.App.1997). Furthermore, "[p]roof of a party's knowledge is similar to proof of such elusive facts as intent, motive, undue influence, mental capacity, and the like." *Wagner v. Uffman*, 885 S.W.2d 783, 787 (Mo.App.1994). "Summary judgment is rarely appropriate in these types of cases in which facts must in nearly every case be proven by circumstantial evidence." *Id.*

### a. Representations Relating to the Roof

■■■ In support of Appellants' contention that Christians had represented to them that there were no roof leaks and that no repairs had been made to the roof and that these representations were false and Christians knew them to be false,

agrees with this statement in his brief. Respondent Christians' brief posits that Christians "sold a house to Appellants on September 2, 1992," but cites only to his motion for summary judgment as support for this statement. Appellants' amended petition in the trial court stated that "[Appellants], through a

contract for sale ... agreed to purchase" the house in question "on or about the first day of September, 1992." As this Court understands the record, the termite inspection in question was performed after the contract for sale was signed but before the closing.

Appellants presented to the motion court the deposition testimony of Mrs. Birdsong. Mrs. Birdsong testified that Christians told her that he was a roofer and that he had inspected the roof and that the roof was a "sound roof" and "a fine roof [with] no problems, well constructed." Furthermore, she stated that Christians had told Appellants that there were "one or two shingles" that needed replacement. Mrs. Birdsong also testified that "[h]e told me he believed [that the roof] had never been repaired." She then related that she estimated that there existed a three-foot by three-foot section of the roof that had been repaired by placing fiberglass shingles under the wood shingles and acknowledged that the repair was "obviously visible." Mrs. Birdsong also testified that prior to Appellants purchasing the house she observed that there was a water spot on the kitchen ceiling. Mrs. Birdsong related, without objection, that she was told by Christians' wife (deceased at time of trial) that it was from a water bed leak upstairs but that "they fixed it and that was that." After the house was purchased, this same area of the kitchen ceiling continued to leak, and leaked several times before the discovery was made that the leak, although not a substantial one, was coming from "[t]he flashing" of the roof.

We observe that "the existence of only circumstantial evidence on a material issue is no bar to recovery of and by itself." *Martin*, 957 S.W.2d at 363. Mrs. Birdsong's testimony that the roof had indeed been repaired by fiberglass shingles, combined with her testimony that Christians told her that he was a roofer and that he had inspected the roof and that he believed that the roof had never been repaired, is circumstantial evidence that Christians' representation was false and that he knew it was false. "Intent is in nearly every case proven by circumstantial evidence and as such where a party offers circumstantial evidence indicating intent to defraud, failure to provide direct evidence of such intent is an improper basis for summary judgment." *Wagner*, 885 S.W.2d at 786. Additionally, Mrs. Birdsong's testimony that there was a water spot on the kitchen ceiling at the time Appellants' purchased the house, that this same area leaked on a number of occasions when it rained and that she discovered that the source of the leak was the "flashing" of the roof, all combine to raise a genuine issue of material fact concerning Christians' representations and his knowledge of the falsity of these representations relating to any roof leaks and/or roof repairs. *See generally Id.* at 787. "It is not the truth of these facts which matter [sic], but whether the facts are disputed." *Rogers*, 908 S.W.2d at 389. Appellants have adequately established that there are disputed issues of facts relating to Christians' representations regarding the roof. The granting of summary judgment regarding this portion of Appellants' claim for fraud was error. *Id.* at 389–90; *Wagner*, 885 S.W.2d at 787.

### b. Representations of No Structural Problems

Turning next to the representation that "there had not been structural problems with the house," the relevant evidence presented by Appellants consisted of an affidavit of and deposition testimony of Robert Fuller. Fuller's affidavit states, in pertinent part, that "during ... Christian's [sic] occupancy [of the house in question], [Fuller] personally observed ... Christians patching and painting the siding on the south and east exterior sides of the structure" and that when Fuller "inquired of [Christians] as to why he had to patch the siding, [Christians] stated 'I'm getting water in there.'" In his deposition testimony, Fuller stated that Christians was patching the areas around the "trim boards." Such testimony is circumstantial evidence sufficient to create a genuine issue of material fact concerning the knowledge of the falsity of Christians' representations that the house had no structural problems. *See Wagner*, 885 S.W.2d at 786–87. The granting of summary judg-

ment regarding this portion of Appellants' claim for fraud was error. *See Rogers*, 908 S.W.2d at 389–90; *Wagner*, 885 S.W.2d at 787.

### c. Representations Regarding Stucco Exterior

■ As to the representation that "the exterior construction of the house was part 'stucco,' " Appellants again presented Mrs. Birdsong's deposition testimony.[5] Mrs. Birdsong testified that Christians told her that the house was stone and stucco. As best we can glean from our review of her deposition and Appellants' motion in opposition to Christians' motion for summary judgment, Appellants appear to premise their proof that Christians knew that the house was not partly stucco on the basis that several months after closing Christians brought Appellants some "masonry stucco paint" together with a "five gallon white plastic can" labeled "stucco something." The reason Christians came to Appellants' home was to bring some "material" to help them repair a crack in the exterior of the house. As best we can determine from the deposition, it was at that point, according to Mrs. Birdsong, that she determined that the "material" Christian brought "wasn't quite the stuff we thought it was. You don't have to do it that way. You just smack it on the wall and smear it in."

This court cannot tell how the foregoing account qualifies as evidence that Christians knew the material in question was not stucco at the time he made such a representation to Appellants. We do not perceive that Appellants have set out a genuine issue of material fact that requires resolution. *ITT Commercial Finance*, 854 S.W.2d at 378. Summary judgment in favor of Christians was properly entered on Appellants' claim that the representation that the house was part stucco was fraudulent.

### d. Representations Regarding Water Problems

■ As to the representation that "there had been no water problems with the house," Appellants submitted the testimony of Mrs. Birdsong, in which she recounted that Mrs. Thelma P. Callaway had told her that "[s]he believed [Christians] to have flooded in the basement." However, in a supporting affidavit submitted by Appellants, Mrs. Callaway, expressly stated that "I recall that the basement of [the house in question] has flooded." Ms. Callaway also stated that "[a]fter one of those occasions, the individual occupying the house constructed a concrete curb or barrier at the driveway leading to the basement garage. I know the basement flooded because the occupants removed wet furniture and other items from the basement to dry outdoors." Notably, however, the affidavit contains no further averments as to who owned or was in possession of the house when the basement flooded or who constructed the concrete curb or barrier at the driveway leading to the basement garage. Additionally, although Mrs. Birdsong testified that she's "got neighbors that says they seem to think that Mr. Christians flooded," she also related that "they really can't remember if it was the Christians' furniture out there or the

---

5. According to Christians' appellate brief, "[a]t the time summary judgment was argued, stucco and damages from stucco had already been removed from this lawsuit through partial summary judgment granted to ... Christians on September 30, 1998." Our examination of the record reveals a docket entry for September 30, 1998, denominated "Judgment," and signed by Special Judge Baldridge, which recites only that "Court takes up Defendant Christians motion for partial Summary Judgment. Said motion is sustained." The docket does reflect an entry dated August 6, 1998, that recites "Motion for Partial Summary Judgment filed by Joe Crosthwait, Attorney for Defendant Raymond Christians." However, the record is devoid of any copy of this previous motion for Summary Judgment. Even more puzzling is the fact that the motion for Summary Judgment filed by Christians on October 20, 1998, argues the issue of the "stucco," three weeks after it was supposedly decided.

Thomas' furniture out there or the Bird-songs'." Furthermore, Mrs. Birdsong recited that "Mrs. Callaway told me—that Ron Thomas had flooded and she believed Mr. Christians too, but she had really no proof unless he was the one that built the curb." Continuing, Mrs. Birdsong testified that "[w]hoever built that curb did some work for her sister-in-law and had also flooded. And she couldn't remember if that was still Raymond Christians—I mean, Ron Thomas with them at the time or Raymond Christians." However, Mrs. Callaway's affidavit contains no averments as to who owned or was in possession of the house when the basement flooded. We are, therefore, forced to conclude that these vague recitals by Mrs. Birdsong relative to Christians having "flooded" do not present a genuine issue of material fact as to whether Christians knew that his representations regarding the "water problem" were false. While the "burden of establishing a right to judgment as a matter of law rests with the moving party and any evidence which demonstrates a genuine issue of material fact will defeat the moving party's prima facie showing," *Hanson v. Union Elec. Co.*, 963 S.W.2d 2, 4 (Mo.App. 1998), "[a]n issue is genuine only if it is real and substantial; it may not consist of 'of conjecture, theory and possibilities.'" *Id.*(quoting *ITT Commercial Finance Corp.*, 854 S.W.2d at 378). Christians' motion for summary judgment was properly granted as to his representations of "no water problem."

This does not end our inquiry though, in that Christians also claims that Appellants' response to his motion for summary judgment was untimely and that it did not respond to his assertion that the statute of limitations had expired on Appellants' claim.

**6.** On appeal, Christians argues that the statute of limitations had run on Appellants' claim in that "the sale of the house in question was over five years and seven months prior to the date the case was filed, April 20,

### Timeliness of Response to Motion for Summary Judgment.

In his motion for summary judgment, Christians contended that summary judgment was also proper because Appellants' response to Christians' Motion for Summary Judgment was not timely filed. This contention is without merit. Rule 74.04(c)(2) states, in pertinent part, that "[w]ithin thirty days after a motion for summary judgment is *served*, the adverse party shall serve a response on all parties...." Rule 74.04(c)(2)(emphasis added). The record reflects that Christians' Motion for Summary Judgment was filed on October 20, 1998, and served on November 2, 1998. Appellants' Response to the Motion for Summary judgment was filed on November 30, 1998, within the prescribed time period.

### Statute of Limitations.

In his motion for summary judgment Christians attached a form titled "Property Inspection," dated September 14, 1992, which was signed by Appellants. On the form the Appellants had placed a check mark next to the statement "I find the property to be in the agreed upon condition. Heating, electrical, air conditioning, plumbing, sewer and septic systems & all appliances are in normal working order." Christians thereby maintained that "[t]he statute of limitations is not tolled for eight months by [Appellants'] own failure to obtain the very real estate inspection by which [Appellants] now allege they later discovered the fraud." [6] However, Christians cited to no case law, nor does our independent research now reveal any, supporting his contention that Appellants' failure to either specifically hire a professional inspector or otherwise "obtain the very real estate inspection" at the time of sale, constitutes a lack of due diligence as a matter of law. Further-

1998." We observe that the Appellants agree, in their response to Christians' motion for summary judgment, that the applicable statute of limitations is set out in section 516.120(5). *See* § 516.120(5), RSMo 1986.

more, "[w]here the running of the statute of limitations depends upon when the plaintiff discovered or by reasonable diligence could have discovered the fraud, a question of fact is presented." *Schwartz v. Lawson,* 797 S.W.2d 828, 836 (Mo.App. 1990).[7] We observe that the applicable statute of limitation commences to run when the fact of damage is ascertainable, even if the exact amount of damage cannot be verified or if some additional damage may arise at a future time. *See Cullom,* 959 S.W.2d at 918. "Where the issue of the statute of limitations involves determination of when a claim accrues, summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law." *Tilley v. Franklin Life Ins. Co.,* 957 S.W.2d 349, 351 (Mo.App.1997). Our review of the record convinces us that there exists genuine issues of material facts concerning the relevant dates that Appellants would have been able to discover the defects in their house, particularly latent defects such as wet rot, slow leaking beneath the surface of the roof or located within difficult to access walls, and structural repairs made to the roof. "[I]f contradictory conclusions as to when a cause of action accrued can be drawn from the evidence, the question is to be submitted to the jury and is not appropriate for summary judgment." *Chicago Title Ins. Co. v. Jackson, Brouillette, Pohl, & Kirley, P.C.,* 930 S.W.2d 22, 25 (Mo.App.1996). Accordingly, the trial court erred in granting Christians' motion for summary judgment on this basis.

The granting of the summary judgment in favor of Kidd is reversed. The granting of summary judgment in favor of Christians is affirmed in part, as to the alleged representations made relative to the house being "part stucco" and the absence of a water problem in the home. The remaining portions of the summary judgment in favor of Christians are reversed. The case is remanded for further proceedings consistent with this opinion.

MONTGOMERY, P.J., PREWITT, J., concur.

---

7. In this connection, we observe that in the sale of personal property "[w]hen distinct and specific representations have been made and are to be acted upon, the representee has the right to rely on the representation even if the parties stand on equal footing or have equal knowledge or means of information relating to the subject matter of the representation." *Iota Management Corp. v. Boulevard Inv. Co.,* 731 S.W.2d 399, 413 (Mo.App.1987). "Likewise, the representee is entitled to rely on the representation when he lacks equal footing for learning the truth and where the facts are peculiarly within the knowledge of the party making the representation and are difficult for the representee to ascertain." *Id.*