Ann DANIELS and Nina Ruth
McCullah, Appellants,

v.

SENIOR CARE, INC., a Missouri
Corporation, Respondent.

Nos. 23142, 23216.

Missouri Court of Appeals,
Southern District,
Division Two.

June 29, 2000.

John M. Albright, Moore & Walsh, L.L.P., Poplar Bluff, for appellant.

Laurel Stevenson, John G. Schultz, Franke & Schultz, P.C., Springfield, for respondent.

ROBERT S. BARNEY, Judge.

Appellants Ann Daniels and Nina Ruth McCullah ("Plaintiffs") sued Senior Care, Inc., a Missouri Corporation ("Defendant"), for the wrongful death of their mother, Imogene Ingram, resulting from a

fire in their mother's home, in which Defendant's employee also perished. The Circuit Court granted Defendant's motion for summary judgment and Plaintiffs appeal.[1]

In their appeal, Plaintiffs contend that the trial court erred in granting summary judgment and raise three points of trial court error. Plaintiffs assert that, contrary to the trial court's judgment, they offered facts showing that: (1) due to their mother's diminished mental capacity and while under Defendant's employee's care, Defendant owed a duty to their mother, either contractually or gratuitously, to provide 24–hour care; (2) Defendant breached this duty by Defendant's employee stacking "combustibles," i.e., papers and magazines, or allowing decedent to stack combustibles, against an electric baseboard heater in the home; or otherwise failed to provide adequate safeguards to protect their mother from "known hazards" that she didn't understand; (3) Defendant's employee's breach of duty was a proximate cause of a fire that ignited at their mother's home, ultimately resulting in her death.[2] Because Plaintiffs' points are interrelated we review them conjunctively.

 "This Court reviews the record in the light most favorable to the party against whom summary judgment was entered." *Stanley v. City of Independence*, 995 S.W.2d 485, 486 (Mo. banc 1999). "Review is essentially de novo, as the propriety of summary judgment is an issue of law." *Id.* "Summary Judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id*; *see* Rule 74.04(c)(3). "The key to summary

judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993); *see also Mueller v. Lemay Bank & Trust Co.*, 990 S.W.2d 690, 691 (Mo.App. 1999). "[N]othing in *ITT* suggests that it intended to overrule a long standing rule ... provid[ing] that on a summary judgment motion, 'neither the trial court nor we are authorized to determine the credibility of statements or testimony made under oath.'" *Nolte v. Wittmaier*, 977 S.W.2d 52, 59–60 (Mo.App.1998). "Rather, such matters are for determination upon a complete trial." *Id*; *see also Oetker v. Sherwood*, 920 S.W.2d 639, 641 (Mo.App. 1996) ("On a motion for summary judgment, the court is not authorized to determine the credibility of conflicting testimony under oath, but rather, resolution of those matters is for the fact finder at a complete trial").

Viewed in the light most favorable to Plaintiffs, the evidence shows that the decedent was 86 years old at the time of her death. In deposition testimony, Dr. Philip J. LeFevre testified to treating decedent from 1985 through 1995. Dr. LeFevre indicated that at the time of his earliest visit with decedent she suffered from "a chronic schizophrenic condition, that had as its features, paranoia." He stated that she also was a "severe alcoholic," and he related his concerns that there was some beginning of dementia. Dr. LeFevre further testified that in his 1992 treatment of decedent "she was getting a fair amount of memory loss," meaning "getting a progression of the dementia...." In seeing her again in 1994, he opined that "[t]he demen-

---

1. We observe that Plaintiffs filed their notice of appeal on the 40th day following a docket entry sustaining Defendant's motion for summary judgment. A second notice of appeal was filed following the entry of the formal order and judgment of the circuit court. We consolidate the appeals for purposes of this opinion. *See* Rule 81.05(b). All rule references are to Missouri Court Rules (2000), unless otherwise set out.

2. In its Order and Judgment the trial court made no specific findings. It denied Plaintiffs' cross-motion for summary judgment as to liability and granted Defendant's motion for summary judgment "as to all claims [in][P]laintiffs' petition."

tia, however, was getting worse, in the sense of forgetfulness, especially of recent events." He also opined, based on a reasonable degree of medical and scientific certainty that:

> she probably was suffering from a life-long schizophrenic process, that was further complicated by substance abuse, meaning alcohol. Which subsequently, probably initiated an organic brain syndrome, the dementia, which progressed. And what we were seeing towards the end was more of the dementia, rather than the paranoia, subsequently the schizophrenia.

The record also shows that decedent was incapable of making everyday decisions. Although she could pick-up magazines, she wasn't capable of walking without assistance and used a walker. While she did not require skilled nursing care, she required help with such aspects of daily living as cooking, bathing and cleaning the house, which Defendant's employee, Ms. Bonnie Crawford ("Ms.Crawford"), provided as a live-in companion over a period of almost two years.

Decedent's daughter, Jane Thompson, testified in deposition that "we were having [Ms. Crawford] to dole out the cigarettes to [decedent]." Ms. Thompson also related that "we wanted [Ms. Crawford] to supervise [the decedent] while she smoked because she was very bad about knocking cigarettes out of the ashtray and not noticing it and they would fall down on the chair she was sitting in." Ms. Thompson testified that she began to ask Ms. Crawford to distribute the cigarettes to her mother, "several months before she died, before the fire." Furthermore, Ms. Thompson, testified in deposition that she and Ms. Crawford "talked repeatedly ... on several occasions about how we have to keep things away from the heaters especially flammable things like the furniture or an afghan that [decedent] had thrown over a rocker in her bedroom that was too close to the heater one time." Ms. Thompson repeated to Ms. Crawford that "[w]e

cannot keep things close to these heaters." Additionally, Ms. Thompson related that she was last at decedent's home on December 23, 1995, for about one hour and "didn't see anything out of the ordinary." She also stated that she was not aware of any family members that were present at the home between her visit and the time of the fire, a fact acknowledged by Defendant in its brief.

On December 26, 1995, a fire occurred at decedent's home. Mr. Kent Turner, a fire marshal for the City of Springfield Fire Department, testified by deposition that he had been performing fire investigation duties some fifteen years and related that he had investigated around 1,500 fires. He determined that the "heaviest burn to be in the living room located on the southeast corner of the house." He stated that in his opinion it "was the area of origin." He testified he found a "table right in the very corner and ... two appliances ... like a humidifier and an air cleaner...." Turner also found a "little coffee table stuck right in the corner, and they had a whole lot of magazines and papers stacked underneath and on top of that coffee table." He stated further that he "noticed that there was an especially heavy burn to the right of that table where there was a bunch of papers and magazines laying on top of an electric heater, a wallboard heater that ran in that corner." He said that he "noticed especially heavy heat at that area, because the metal was burned white as opposed to the metal on the rest of the heater away from that area being black just from smoke." Mr. Turner also related that "there was magazines and papers piled up on top of ... or laying over on top of these, of the heating element." In response to the question from Plaintiffs' counsel, "Is this opinion based on a reasonable degree of scientific certainty?," and after Defendant's counsel's objection, Mr. Turner answered, "[t]he reason I think this is because of the fire patterns show this is the area where the heat first started and on the— according

to the burn patterns that I saw. This is the first area the heat was coming from." He further testified that "I did eliminate cigarettes because ... I did not find evidence of where a cigarette had ignited that chair or the couch...." He further answered:

> After searching for different heat sources ... the only thing I found would have been the electric wall heater.... I found it in the condition where papers and magazines had been piled on top of ... the heating element, and my conclusion was this was the only thing I could find that would have caused the fire.

Mr. Turner also discounted a "humidifier" and an "air cleaner, air purifier or something" as the source of the fire because they were not "plugged in." Further, while he found a lamp plugged in, he "had no reason to feel that the lamp would have caused the fire," and concluded by saying that the newspapers and magazines being the only heat source that he had found in the area of origin, "that was my conclusion that it was probably the cause of the fire."

■■■ "The elements of a negligence claim are: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the failure of the defendant to perform that duty; and (3) an injury to the plaintiff directly and proximately caused by the defendant's failure to perform the duty owed to the plaintiff." *Guffey v. Integrated Health Servs. of Kansas City at Alpine N.*, 1 S.W.3d 509, 517 (Mo.App.1999).

■■■ "In a negligence action, liability only exists when a defendant's conduct 'falls below the standard [of care] established by law for the protection of others against unreasonable risk of harm,' Restatement (Second) of Torts, § 282, and such conduct is the proximate cause of the plaintiffs' injuries." *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993). "The particular standard of care that society recognizes as applicable under a given set of facts is a question of law for the courts." *Id.* "Whether a defendant's con-

duct falls short of the standard of care is a question of fact for the jury." *Id*; *see also Bryan v. Missouri State Hwy. Patrol*, 963 S.W.2d 403, 406 (Mo.App.1998) ("Negligence is ordinarily a question for the jury and always is when the evidence on the issue is conflicting or where, the facts being undisputed, different minds might reasonably draw different conclusions from them").

■■■ "The amount or degree of vigilance and caution which is necessary to reach the required standard of reasonable or ordinary care may vary according to the capacity of the person with respect to whom the duty to exercise care exists...." 65 C.J.S. *Negligence* § 12 (1966). "[I]n determining whether or not an act or omission resulting in injury to another involved a lack of sufficient care, the ability of the person injured to take care of his personal safety is a matter proper for consideration." *Id*; *see also Howell v. Kroger Grocery & Baking Co.*, 178 S.W.2d 101, 104 (Mo.App.1944).

> Thus, where it is, or should be, apparent that a person is so devoid of intelligence as to be unable to apprehend danger and avoid or escape it, this circumstance imposes on those whose acts or omission may injure him a duty to exercise care commensurate with his incapacity to take care of himself. Where one has actual or imputed knowledge that another, who may be injured by his act or omission, is afflicted with some physical incapacity which may affect his ability to observe or avoid danger, such as ... old age ... or lameness, the fact of such incapacity is a matter proper for consideration in determining whether or not sufficient care has been exercised with respect to such person.

65 C.J.S. *Negligence* § 12 (1966). "Under respondeat superior, an employer is liable for damages from the misconduct of its employee acting within the course and scope of employment." *Stanley*, 995 S.W.2d at 487.

In the instant matter, Plaintiffs presented evidence to the trial court probative of a duty of care by Defendant for decedent's well-being and safety. Indeed, according to Ms. Thompson, Defendant was hired to provide 24 hour a day care for decedent. Plaintiffs' proffered evidence showed that decedent was 86, walked only with the aid of a walker, had a history of alcoholism and suffered from senile dementia. Insofar as the trial court's judgment may be interpreted as a determination that Defendant had no duty of care to decedent, the determination was in error.

However, Defendant also urges that as a matter of law, Plaintiffs are unable to show a breach of Defendant's duty of care. We disagree. "Where reasonable minds could infer negligence, determinations of breach of duty are questions of fact for the finder of fact, not questions of law for this court." *G.E.T. ex rel. T.T. v. Barron*, 4 S.W.3d 622, 625 (Mo.App.1999); *see Bryan*, 963 S.W.2d at 406; *see also Smith v. Gravois Rest Haven, Inc.*, 662 S.W.2d 880, 883 (Mo.App. 1983). Here, Plaintiffs submitted probative facts showing decedent's physical and mental impairment and showing that decedent, in at least one occasion, had "thrown" an afghan over a rocker in decedent's bedroom that was considered too close to the "heaters." While decedent may have been strong enough to physically carry a newspaper or a magazine about the house, the evidence from the fire marshal reflected that several "papers and magazines" were lying on top of the heating element of the heater upon inspection of the fire scene. The inference being that either Defendant's employee allowed decedent to accumulate papers and magazines on the heater, when she was under a duty to prevent decedent from doing so, or, alternatively, Defendant's employee placed these combustibles on the heater herself. "We accord the non-movant the benefit of all reasonable inferences from the record." *ITT Commercial Fin.*, 854 S.W.2d at 376. "Disputes over facts that might affect the outcome of the suit will preclude the entry of a summary judgment." *Oetker*, 920 S.W.2d at 641. "Where the record reasonably supports any inference other than those necessary to support a judgment for the movant, a genuine issue of material fact exists and the movant's motion for summary judgment should be overruled." *Birdsong v. Christians*, 6 S.W.3d 218, 224 (Mo.App.1999). Plaintiffs have presented genuine issues of material facts, which make summary judgment inappropriate on the basis that as a matter of law there was no breach of duty by Defendant. *See G.E.T. ex rel. T.T.*, 4 S.W.3d at 625.

Defendant also maintains that summary judgment was appropriate in this matter because, as a matter of law, Plaintiffs could not make a showing of proximate cause. Defendant argues that there was no evidence showing that the fire started when combustibles were stacked against the baseboard heater. It asserts that the fire marshal never gave an opinion to a reasonable degree of certain that the fire started when combustibles were stacked against a baseboard heater. We disagree.

"To recover damages ... a defendant's negligence must be the proximate cause of the plaintiff's injury." *Stanley*, 995 S.W.2d at 488. "The general test for proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence." *Id.* "Each case is decided on its own facts." *Id.*

We observe that in a pre-comparative fault wrongful death case, our Supreme Court held that:

> where there are no eyewitnesses, it is frequently impossible to prove the facts and circumstances surrounding the injury, and especially the absence of contributory negligence. On account of this, the courts are more liberal in allowing the questions of the negligence of the defendant and of the contributory negligence of the plaintiff to go to the jury upon slight evidence.

*Keeney v. Callow,* 349 S.W.2d 75, 80 (Mo. 1961). "Furthermore, there is a presumption that a decedent was not guilty of negligence contributing to his death where, as here, there was no eyewitnesses or direct evidence of conduct which would indicate negligence." *Id.*

 "We observe that 'the existence of only circumstantial evidence on a material issue is no bar to recovery of and by itself.'" *Birdsong,* 6 S.W.3d at 226 (quoting *Martin v. McNeill,* 957 S.W.2d 360, 363 (Mo.App.1997)). Circumstantial evidence is viewed no differently from direct evidence when determining whether there was a genuine issue as to any material fact so as to preclude summary judgment. *See Gott v. First Midwest Bank of Dexter,* 963 S.W.2d 432, 440 (Mo.App. 1998). At trial "[a] plaintiff may prove essential facts by circumstantial evidence 'so long as the facts proved and the conclusion to be drawn 'are of such a nature, and are so connected and related to each other, that the conclusion ... may be fairly inferred.'" *Parris v. Uni Med, Inc.,* 861 S.W.2d 694, 697 (Mo.App.1993) (quoting *Ward by Walker v. McQueen,* 670 S.W.2d 176, 177 (Mo.App.1984)). Indeed, "[p]laintiffs may establish causation by circumstantial evidence, which includes favorable inferences drawn from all the evidence." *Stacy v. Truman Med. Ctr.,* 836 S.W.2d 911, 922 (Mo. banc 1992). While, technically, the fire marshal gave no explicit answer to the question whether his opinion as to the origin of the fire was based on a reasonable degree of scientific certainty, nevertheless, his testimony "can be taken together with other evidence in determining if plaintiff made a submissible case of causation." *Parris,* 861 S.W.2d at 698. The import of his testimony clearly shows that he determined the fire commenced around the baseboard heating device. *See generally Cipolla v. West,* 844 S.W.2d 473, 475 (Mo.App.1992). As previously set out, the fire marshal testified as to "the heating element" and stated "my conclusion was this was the only thing I could find that would have caused the fire." He also re-lated that there was "heavy burn to the right of [a table] where there was a bunch of papers and magazines laying on top of an electric heater...." He discounted cigarettes as a cause for the fire, as well as other electric appliances. He also testified that he "noticed especially heavy heat in that area, because the metal was burned white as opposed to the metal on the rest of the heater away from that area being black just from smoke." He concluded by saying that the newspapers and magazines being the only heat source that he had found in the area of origin, "that was my conclusion that it was probably the cause of the fire." "If the logical conclusion from the evidence is that if certain things had been properly done certain results would not have occurred, and such results did occur, the evidence of causation is sufficient." *Parris,* 861 S.W.2d at 697. Viewing all of the foregoing evidence in a light favorable to Plaintiffs, as we must, we determine that Plaintiffs' submitted a probative factual scenario showing that Defendant's breach of its duties to decedent was a proximate cause of her death. *See Guffey,* 1 S.W.3d at 519. Accordingly, summary judgment was inappropriate on the basis of failure to show proximate cause.

Defendant was not entitled to judgment as a matter of law on Plaintiffs' claim for the wrongful death of decedent. It was error for the trial court to grant summary judgment. *Id.* The judgment of the trial court is reversed and this cause remanded for further proceedings consistent with this opinion.

PREWITT, J., concurs.

GARRISON, C.J., concurs.