

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| PHYLLIS RAGSDALE and<br>LARRY RAGSDALE, | ) | No. ED111973 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | Cape Girardeau County |
| v. | ) | Cause No. 19CG-CC00214 |
| | ) | |
| CHRIS D. CHARLTON, D.C. and | ) | |
| CHARLTON CHIROPRACTIC, LLC, | ) | Honorable Scott Alan Lipke |
| | ) | |
| Respondents. | ) | Filed: May 14, 2024 |

Phyllis Ragsdale ("Ragsdale") and Larry Ragsdale filed suit against Chris D. Charlton, D.C. and Charlton Chiropractic, LLC (collectively, "Charlton") after Ragsdale suffered three broken ribs from a chiropractic spinal adjustment. The circuit court entered summary judgment in Charlton's favor, and Ragsdale appeals.

Because there are genuine issues of material fact regarding whether Charlton's treatment of Ragsdale was negligent and resulted in Ragsdale's broken ribs, the circuit court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

## Background

Ragsdale experienced persistent back and neck pain. In February 2016, Ragsdale consulted with Charlton, who developed a twelve-visit treatment plan to alleviate her pain by

using a diversified technique to adjust her spine. Prior to beginning her treatment, Charlton presented Ragsdale an informed consent document to sign, which identified risks associated with chiropractic care including "sprain/strain injuries, irritation of a disc condition, and rarely, fractures." Ragsdale received five treatments adjusting her spine without any issues. However, on her sixth visit, three of Ragsdale's ribs were broken during the spinal manipulation.

Ragsdale filed a medical malpractice suit against Charlton seeking damages for injuries she suffered during the spinal manipulation. Ragsdale's husband sought damages for loss of consortium.

Charlton moved for summary judgment, arguing fractures are a known risk of chiropractic treatment and may occur without negligence. Charlton argued there was nothing to support the theory he breached the standard of care other than Ragsdale's bad outcome. The circuit court's judgment found Ragsdale was unable to demonstrate Charlton was negligent or that his negligence caused her injuries and entered judgment in Charlton's favor. Ragsdale appeals.

**Standard of Review**

This Court reviews the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when the record demonstrates there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020); Rule 74.04(c)(6). The summary judgment record is viewed "in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778, 783 (Mo. banc 2023) (quoting *Brockington v. New Horizons*

*Enterprises, LLC*, 654 S.W.3d 876, 880 (Mo. banc 2022)). "[S]ummary judgment is an extreme and drastic remedy, and appellate courts should remain cautious in affirming such judgments." *Clark v. SSM Healthcare St. Louis*, 666 S.W.3d 210, 214 (Mo. App. 2023).

**Analysis**

Ragsdale claims the circuit court erred in granting summary judgment in Charlton's favor because there were disputed issues of material fact regarding Charlton's treatment.[1] Ragsdale argues the evidence supported a reasonable inference Charlton negligently used excessive force during her spinal adjustment and caused her fractured ribs.

To make a claim of medical malpractice, Ragsdale must prove Charlton failed to meet a required medical standard of care, his acts or omissions were performed negligently, and those acts or omissions caused her injuries. *Edgerton v. Morrison*, 280 S.W.3d 62, 68 (Mo. banc 2009). Charlton's motion for summary judgment asserted Ragsdale was unable to produce evidence demonstrating he committed any sort of negligent act or that negligence caused Ragsdale's injury. The circuit court's judgment found Ragsdale was unable to demonstrate Charlton was negligent or that his negligence caused her injuries.

On appeal, Charlton continues to argue that as a matter of law, Ragsdale is unable to show he violated the standard of care because Ragsdale's only evidence of negligence is the fact that the injury occurred. Charlton relies upon *Stalcup v. Orthotic & Prosthetic Lab, Inc.*, 989 S.W.2d 654, 657 (Mo. App. 1999), for the proposition that "a presumption of negligence based solely on an adverse result is not permitted." Charlton argues the mere fact Ragsdale suffered fractured ribs, an identified risk of treatment, is insufficient to demonstrate he was negligent in any way. Yet, Charlton relies on the single statement in *Stalcup* in isolation. The next sentence in

_____

[1] Because Ragsdale's two points on appeal are interrelated, they are reviewed concurrently.

*Stalcup* states, "However, an adverse result is a fact which may be considered, provided it does not constitute the complete basis for the expert opinion." *Id*.

Viewed in the light most favorable to Ragsdale, the record shows there were genuine issues of material fact precluding the entry of summary judgment. Ragsdale presented two expert depositions demonstrating there were disputed facts that her broken ribs did not constitute the complete basis for their opinions that Charlton committed medical malpractice. Ragsdale presented an expert Doctor of Chiropractic ("Chiropractor").[2] Chiropractor testified that when the diversified treatment is applied properly, there is limited pressure on the ribs. Chiropractor explained he would not expect patients receiving this type of treatment to complain about the amount of force used. Chiropractor clearly stated that in a patient without contraindications, an excessive amount of force would need to be applied in order to break a rib. He opined that an excessive amount of force must have been used in this case because Ragsdale did not have contraindications and received five prior treatments without incident.

Additionally, Ragsdale presented the deposition of a trained chiropractor, owner and clinical director, and faculty member at a chiropractic college ("Professor"). Professor stated if the technique Charlton employed was applied properly, a person would not expect a broken rib injury. Professor specifically noted that just because Ragsdale had an undesirable outcome does not necessarily mean that "something wrong" happened. However, after his review of her records, Professor explained he believed Ragsdale's broken ribs were the result of Charlton's treatment. Professor further stated that he did not know why Ragsdale's ribs would have been broken in this treatment when she received five prior non-injurious treatments.

---

[2] All names of witnesses have been omitted in accordance with Section 509.520.1, RSMo Supp. 2023.

"Negligence is ordinarily a question for the jury and always is when the evidence on the issue is conflicting or where, the facts being undisputed, different minds might reasonably draw different conclusions from them." *Pyle v. Layton*, 189 S.W.3d 679, 684 (Mo. App. 2006) (quoting *Bryan v. Mo. State Highway Patrol,* 963 S.W.2d 403, 406 (Mo. App. 1998)). "Where reasonable minds could infer negligence, determinations of breach of duty are questions of fact for the finder of fact, not questions of law for this court." *Daniels v. Senior Care, Inc.*, 21 S.W.3d 133, 138 (Mo. App. 2000) (quoting *G.E.T. ex rel. T.T. v. Barron*, 4 S.W.3d 622, 625 (Mo. App. 1999)).

While Charlton maintains he did not use excessive force in his treatment, both Chiropractor and Professor stated they believed Ragsdale's broken ribs were the result of Charlton's use of force in his treatment. Both experts offered rationales from their opinions that went beyond the mere fact of injury. Ragsdale also stated she felt an excessive amount of force was used during the spinal adjustment that broke her ribs. "Neither the trial court nor this [C]ourt is authorized to determine the credibility of statements or testimony made under oath offered in support of or in response to a motion for summary judgment." *Ross v. Presley*, 359 S.W.3d 156, 160 (Mo. App. 2012) (quoting *Payne v. City of Osage Beach,* 132 S.W.3d 314, 317 (Mo. App. 2004)). Factual disputes that could affect the outcome of trial preclude the entry of summary judgment. *Daniels*, 21 S.W.3d at 138. Because Ragsdale presented genuine issues of material fact, entry of summary judgment was erroneous.

## Conclusion

The circuit court's grant of summary judgment in Charlton's favor is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
John P. Torbitzky, P.J.

James M. Dowd, J., and
Michael S. Wright, J. concur.

6