Melven **GUFFEY**, as Next Friend of Maude L. Guffey, Appellant,

v.

**INTEGRATED HEALTH SERVICES OF KANSAS CITY AT ALPINE NORTH, Respondent.**

No. WD 56269.

Missouri Court of Appeals, Western District.

July 6, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1999.

Application for Transfer Denied Oct. 26, 1999.

Karen K. Howard, Kansas City, for Appellant.

James M. Yeretsky, Kansas City, for Respondent.

Before: EDWIN H. SMITH, P.J., and HANNA and SPINDEN, JJ.

EDWIN H. SMITH, Presiding Judge.

Maude L. Guffey, by her son and next friend, Melven Guffey, appeals the circuit court's summary judgment for the respondent, Integrated Health Services of Kansas City at Alpine North, on her claim for damages for personal injuries based on the alternative theories of *res ipsa loquitur* and specific negligence.

The appellant raises three points on appeal. In Point I, she claims that the trial court erred in entering summary judgment for the respondent because, contrary to the allegations of the respondent's motion for summary judgment, she was able to produce sufficient facts to establish all the proof elements of her claim for damages based on a theory of *res ipsa loquitur*. In Point II, she makes the same claim as in Point I, except as to her claim based on specific negligence. In Point III, she claims that the trial court erred in denying her discovery motion to inspect the personnel file of one of the respondent's employees because it was allowed under Rule 56.01(a)[1] in that the discovery sought was

---

1. All rule references are to the Missouri Rules of Civil Procedure, 1998, unless otherwise

not privileged, was relevant, and was reasonably calculated to lead to the discovery of admissible evidence.

We reverse and remand.

### Facts

In January 1995, the appellant was admitted to Alpine North, a nursing home operated by the respondent and located in Riverside, Missouri. On March 12, 1995, the appellant's daughter and son-in-law went to visit her and noticed that she had a large bruise on her right temple. When she was asked how the injury occurred, she told them that "they" ripped her clothes off. On March 17, 1995, the appellant's children again discovered bruises on her. On this occasion, she had bruises on her face, arms, and head. She also had a black eye, bumps on her head, and bruises on her inner thigh.

When the family questioned the nursing home staff about the bruises, no one could offer an explanation. However, Matt Mason, a certified nurse's aide, indicated to the family that while he was showering the appellant on one occasion, he had to get "rough" with her to get her clothes off. The appellant, although she was unable to explain her injuries, repeatedly stated that "they" were mean to her, were going to kill her, and beat her up. She also indicated that a large black man was responsible for her injuries. The family reported the incidents to the Riverside Police Department. Detective Marty Rowe investigated the complaint. Although the record reveals that he interviewed several people with regard to the incidents, it does not reveal the outcome of his investigation.

As a result of these unexplained injuries, the appellant's family removed her from Alpine North on March 19, 1995. On March 4, 1997, the appellant, by her son and next friend, Melven Guffey, filed a petition for damages against the respondent based on the bruises that were discovered on March 12 and 17, 1995. In her

indicated.

petition, the appellant alleged that her injuries were the result of the negligence of the nursing home and its staff. On December 6, 1997, the appellant filed her first amended petition alleging a cause of action based on twenty-three allegations of specific negligence and a cause of action under the alternative theory of *res ipsa loquitur*.

In preparation for litigation, the appellant retained Deborah Van Goethem as an expert witness to establish the standard of care required by a skilled nursing facility in Missouri. Although Van Goethem could not explain exactly how the appellant sustained her injuries, she did state in her deposition that the injuries were caused by the lack of attention and care given to her. She further stated that the respondent's investigation and documentation of the injuries was so deficient as to make it impossible to determine the cause of the injuries with any certainty.

During the course of the litigation, the appellant requested that the respondent produce the personnel file of Matt Mason, one of the certified nurse's aides who was responsible for the care of the appellant. She requested the file to determine if the respondent was aware of Mason's criminal record and to determine whether he had previously worked at another nursing home. The respondent objected to this request. It agreed to produce the relevant portions of the file, but objected on the basis that the file also contained information that was not relevant to the appellant's causes of action. As such, the respondent filed a motion for a protective order. The matter was set for a hearing on July 10, 1998, with the file to be produced for an *in camera* inspection. After reviewing the file, the trial court determined that its production was not likely to lead to the discovery of admissible evidence. As such, the court granted the respondent's motion for a protective order on July 15, 1998.

On May 14, 1998, the respondent filed a motion for summary judgment. In its motion, the respondent alleged that summary judgment was appropriate on the appellant's claim for specific negligence in that she could not establish that any negligence on the part of the respondent was responsible for her injuries because neither the appellant, her family, nor her expert witness could explain what caused the injuries. It further alleged that summary judgment was appropriate on the appellant's claim based on *res ipsa loquitur* because she could not produce sufficient facts to establish all of the elements of the cause of action in that she could not establish that the occurrence resulting in her injuries would not have occurred but for the negligence of the respondent nor could she establish that the instrumentality that caused the injuries was under its exclusive control.

On June 19, 1998, a hearing on the respondent's motion for summary judgment was held, after which the court took the motion under advisement. On July 15, 1998, the trial court, the Honorable Ward B. Stuckey, granted the respondent's motion for summary judgment. As to the appellant's negligence claim, the trial court found that the appellant had failed to establish the element of causation. The trial court further found that she had failed to adduce sufficient facts to establish the elements of a cause of action for *res ipsa loquitur*. On August 15, 1998, the appellant filed a motion for reconsideration of the summary judgment in favor of the respondent and for the trial court's refusal to compel production of Mason's personnel file. These motions were denied on August 21, 1998.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in entering summary judgment for the respondent because there was a genuine dispute of material fact and the respondent was not entitled to judgment as a matter of law in that, contrary to the allegations of the respondent's motion for summary judgment, she was able to produce sufficient facts to establish the proof elements of her claim for damages based on a theory of *res ipsa loquitur*. We disagree.

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted).

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

To be entitled to summary judgment under Rule 74.04, the respondent was required to show that: (1) there was no genuine dispute as to the material facts on which it was relying for summary judgment; and (2) the undisputed facts demonstrated that it was entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin.*, 854 S.W.2d at 380. If the movant for summary judgment is a de-

fending party, as is the case here, it can establish a *prima facie* case for summary judgment by one or more of three means: (1) showing facts that negate any one of the appellant's required proof elements; (2) showing that the non-movant, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support the respondent's properly pleaded affirmative defense. *ITT Commercial Fin.*, 854 S.W.2d at 381. "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *Id.*

■■■ In Count II of her two-count amended petition for damages against the respondent, the appellant, although not denominated as such, appears to allege a right to recovery based on the doctrine of *res ipsa loquitur*. This doctrine is a rule of evidence that allows, but does not compel, a jury to infer from circumstantial evidence that the plaintiff's injury resulted from some negligent act of the defendant without requiring the plaintiff to prove specific negligence. *City of Kennett v. Akers*, 564 S.W.2d 41, 45 (Mo. *banc* 1978); *Weaks v. Rupp*, 966 S.W.2d 387, 393 (Mo. App.1998). The doctrine aids an injured party who is uncertain as to the exact cause of his or her injury.[2] *Weaks*, 966 S.W.2d at 394 (*citing Bonnot v. City of Jefferson City*, 791 S.W.2d 766, 769 (Mo. App.1990)). "[T]he doctrine relieves a plaintiff of proving specific negligence and creates a rebuttable inference of general negligence which gets the plaintiff to the jury where the defendant may rebut the inference." *Graham v. Thompson*, 854 S.W.2d 797, 799 (Mo.App.1993).

■■■ To succeed on a claim based on the doctrine of *res ipsa loquitur*, the plaintiff must show: (1) the incident causing the injury is of the kind that does not ordinarily occur in the absence of negligence; (2) the instrumentality causing the injury is under the control of the defendant; and (3) the defendant has superior knowledge as to the cause of the injury. *Weaks*, 966 S.W.2d at 393–94. If the three elements of the doctrine are proven, "the defendant must meet a broader assault than that posed by specific allegations of negligence under a specific negligence theory." *Id.* at 394. "The plaintiff, however, still bears the risk of nonpersuasion and must show by the greater weight of the evidence that injury resulted from the defendant's negligence." *Id.* Whether the doctrine applies in a particular case is a question that is within the exclusive province of the trial court. *Id.* In determining whether the facts and circumstances of a particular case allow for the application of *res ipsa loquitur*, the trial court may apply the wisdom it has gained from common experience and should consider the character

---

**2.** A portion of the language quoted by the court in *Weaks*, that

> [t]he res ipsa loquitur rule aids the injured party who does not know and therefore cannot plead or adduce proof showing the specific cause of or how the event which resulted in his injury occurred, but if he knows how it came to happen, and just what caused it, and either specifically pleads or proves the cause, there is neither room nor necessity for the presumption or inference which the rule affords[,]

*Weaks*, 966 S.W.2d at 394 (*quoting Bonnot v. City of Jefferson City*, 791 S.W.2d 766, 769 (Mo.App.1990)), as well as similar language used in other cases, *i.e., Graham v. Thompson*, 854 S.W.2d 797, 799 (Mo.App.1993), would appear to hold that a plaintiff cannot alternatively *plead* recovery based on specific negligence and *res ipsa loquitur*. This is not so. In *City of Kennett*, the Missouri Supreme Court held that "a plaintiff may, in a case where res ipsa loquitur is applicable to the occurrence causing the damage, plead both general (res ipsa loquitur) negligence and specific negligence and is not precluded from submitting general solely and simply because of the specific allegation in the pleading." *City of Kennett*, 564 S.W.2d at 49.

and nature of the incident and not the mere fact of its occurrence. *Id.*

■ A careful reading of the appellant's *res ipsa* count, Count II of her petition, leaves us confused as to whether she was alleging that the fact finder could, under the doctrine, infer from the circumstantial evidence that the respondent was guilty of ordinary negligence or professional negligence as a health care provider. The distinction is significant as to the application of the doctrine in that it does not generally apply in medical malpractice cases. *Hasemeier v. Smith*, 361 S.W.2d 697, 700 (Mo. banc 1962); *Graham*, 854 S.W.2d at 799; *Deveney v. Smith*, 812 S.W.2d 810, 815 (Mo.App.1991). The doctrine "is only applicable in a malpractice case when a physician or surgeon may be found to have failed to exercise the requisite degree of care in the absence of expert medical testimony tending to so prove." *Deveney*, 812 S.W.2d at 815.

In *Dunagan v. Shalom Geriatric Center*, 967 S.W.2d 285 (Mo.App.1998), although not in the context of *res ipsa*, this court discussed the distinction between the ordinary negligence and professional negligence of a nursing home in determining whether to apply the medical malpractice statute of limitations. The *Dunagan* court held that a claim of negligence against a nursing home, qualifying as a "health care provider," as defined in § 538.205(4),[3] for failure to provide "health care services," as defined in § 538.205(5), constituted a medical malpractice claim rather than one "for ordinary negligence based upon a general duty of care to prevent [the plaintiff, who was a resident of the nursing home when injured,] from falling." *Id.* at 288–89. Thus, *Dunagan* teaches us that not all claims against a nursing home for negligence are considered medical malpractice claims.

Here, the appellant alleged that, from the nature of her injuries and the fact she was under the exclusive control of the respondent when they occurred, it could be inferred, under the doctrine of *res ipsa loquitur*, that the respondent did not use "due care." Whether this references ordinary or professional negligence is unclear. Ultimately, however, this distinction is not important to our discussion in that, under the undisputed facts here, whether the appellant's *res ipsa* claim is characterized as one of ordinary or professional negligence, we find, for the reasons discussed, *infra*, that the respondent was entitled to summary judgment to the extent the appellant's claim was based on *res ipsa*.

In the respondent's motion for summary judgment, it employed the second means by which a defendant/movant can make a *prima facie* case for summary judgment. In this respect, it alleged that the appellant had not produced and would not be able to produce sufficient evidence to allow the trier of fact to find the existence of the first two required proof elements of her claim of negligence on a theory of *res ipsa*. Specifically, it alleged that the appellant could not prove: (1) that she would not have suffered her injuries in the absence of negligence on the part of the respondent; and (2) what instrumentality caused her injuries. As such, if we find that the trial court was correct in finding that either, or both, were true, then we must find that the trial court was correct in finding that the appellant's claim under the doctrine of *res ipsa loquitur* would not succeed.

■ In support of its allegation that the appellant had not produced and could not produce sufficient evidence to establish the first element of her *res ipsa* claim, that her injuries would not ordinarily occur absent negligence by the respondent, the respondent contends that the bruising of an elderly nursing home resident is a common injury that often occurs in the absence of negligence on the part of the nursing home staff, and that the appellant's own expert witness, in her deposition testimony, veri-

---

**3.** All statutory references are to RSMo 1994, unless otherwise indicated.

fied this fact. We agree. Common sense and logic would dictate that bruising, under the circumstances presented in the case at bar, could occur absent negligence on the part of the nursing home. *See City of Kennett*, 564 S.W.2d at 45 (holding that the decision in a *res ipsa* case, as to whether the incident causing the injury is of the kind that does not ordinarily occur in the absence of negligence, "is a judicial decision which is arrived at by judges applying their common . experience in life to the event which gives rise to a suit and deciding whether the criteria for the res ipsa loquitur are satisfied"). And, as contended by the respondent, this proposition is strengthened by the admission of this fact by the appellant's own expert. Thus, we find that the respondent made a *prima facie* case for summary judgment by showing that the appellant had not produced and would not be able to produce sufficient evidence to establish the first element of her claim of *res ipsa loquitur*. *ITT Commercial Fin.*, 854 S.W.2d at 381.

Once the movant has met the burden imposed by Rule 74.04(c) for establishing a *prima facie* case for summary judgment, the burden shifts to the non-movant to show that the movant was not entitled to summary judgment as granted. *ITT Commercial Fin.*, 854 S.W.2d at 381. The burden is then on the non-movant to "show—by affidavit, depositions, answers to interrogatories, or admissions on file— that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed," or that under the undisputed facts, the respondent was not entitled to judgment as a matter of law. *Id.* To establish a genuine dispute of material fact, the non-movant, in his or her response, is required to establish that the dispute is real and substantial and not based on mere conjecture or speculation. *Id.* at 378.

In her response to the respondent's motion for summary judgment, the appellant claimed that a genuine dispute of material fact existed as to whether she would have suffered the bruising in question in the absence of a negligent act on the part of the respondent. With respect to this issue, the appellant concedes that nursing home residents often suffer bruises in the absence of any negligent act by falling down, running into furniture, or hitting themselves on their bed rails. She argues, however, that there was no evidence to show that any of these things occurred. As such, she contends that she did adduce sufficient facts to defeat the respondent's motion for summary judgment. We disagree.

A party seeking the application and benefit of the doctrine of *res ipsa loquitur* need not submit facts surrounding the occurrence that exclude all reasonable hypotheses except defendant's negligence. The application of the doctrine simply requires that there be facts and circumstances from which one can conclude that, more often than not, an occurrence or accident of the type involved results from a failure to exercise reasonable care by the party in charge of the instrumentality.

*Hale v. American Family Mut. Ins. Co.*, 927 S.W.2d 522, 525 (Mo.App.1996) (citations omitted). In our view, the appellant's response did not rebut the respondent's *prima facie* case for summary judgment in that there is nothing to suggest in her response that "more often than not," the bruising she suffered would be the result of the failure of the respondent to exercise due care. If anything, it reinforced the respondent's allegation that elderly people in nursing homes are just as likely to suffer bruising where no negligence on the part of the nursing home has occurred as in cases where it has. As such, the appellant's response to the respondent's motion for summary judgment failed to establish that she had produced or would be able to produce sufficient evidence to establish that her injuries would not have occurred in the absence of the respondent's negligence.

■ Because the appellant failed to rebut the respondent's *prima facie* case for summary judgment on the appellant's claim for damages based on a theory of *res ipsa loquitur*, summary judgment in favor of the respondent would have been appropriate as to that theory of the claim. *ITT Commercial Fin.*, 854 S.W.2d at 381. However, we cannot affirm the trial court's grant of summary judgment on the appellant's claim for damages for personal injuries based upon the appropriateness of summary judgment as to only one theory of recovery pled. This is so in that, where, as here, the non-movant/plaintiff's petition alleges alternate theories of recovery on the same claim, summary judgment on the claim is not proper unless the movant/defendant can establish a case for summary judgment on each theory pled. Rule 74.04(c); *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. *banc* 1984); *Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d 554, 556 (Mo.App.1990). Hence, if we find that the trial court erred in awarding summary judgment on the appellant's claim under a theory of specific negligence, as she claims in Point II, we must reverse.

## II.

In her Point II, the appellant claims that the trial court erred in granting summary judgment to the respondent on her claim for damages for personal injuries based on allegations of specific negligence because it was not entitled to judgment as a matter of law in that she adduced sufficient evidence to establish each element of her cause of action under one or more of the twenty-three specifications of negligence pled. Specifically, she claims that the trial

court erred in finding that she had not adduced sufficient facts to establish the element of causation. Our standard of review on this point is the same as employed in our review of Point I, *supra.*

■ To be entitled to summary judgment on the appellant's claim based on specific negligence, the respondent was required to show that there was no genuine dispute as to any material fact on which it was relying for summary judgment and that on the undisputed facts it was entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin.*, 854 S.W.2d at 380. In its motion for summary judgment, the respondent employed the second means for making a *prima facie* case for summary judgment by alleging that the appellant had not produced and would not be able to produce sufficient evidence to establish all of the elements of her claim of specific negligence. *ITT Commercial Fin.*, 854 S.W.2d at 381. The elements of a negligence claim are: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the failure of the defendant to perform that duty; and (3) an injury to the plaintiff directly and proximately caused by the defendant's failure to perform the duty owed to the plaintiff. *Bond v. California Compensation & Fire Co.*, 963 S.W.2d 692, 697 (Mo.App.1998) (*citing Nelson v. City of Chester, Illinois*, 733 S.W.2d 28, 30 (Mo. App.1987)). As to these elements, the respondent alleged in its motion that the appellant could not establish causation as to any of the twenty-three specifications of negligence alleged in Count I of her petition.[4] This then is the issue we must

4. The appellant alleged that the respondent was negligent in failing to: (1) properly assess her upon admission to the facility; (2) follow up on the initial assessment; (3) properly train its staff on initial and follow-up assessments; (4) advise its staff of procedures to prevent abuse of patients; (5) properly train its staff in the completion of incident reports and reporting of incidents to the Division of Aging; (6) follow its own procedures in the preparing of incident reports; (7) follow

through and see that bed rails were in place as ordered by her doctor; (8) monitor her every two hours while she was in bed to determine whether the bed rails were in place or if she had fallen; (9) monitor her to determine if she had a propensity to fall; (10) monitor her or the staff handling her to detect that she believed that she was being handled roughly by someone; (11) monitor her sufficiently to detect the bruises on her body; (12) monitor her sufficiently to prevent her from

decide in determining whether the trial court erred in granting summary judgment for the respondent on the appellant's claim for damages based on specific negligence.

 In order to prove a causal connection to establish negligence, the plaintiff must show both causation in fact and proximate cause. *Id.* A defendant's conduct is the cause in fact of a plaintiff's injuries where the injuries would not have occurred but for that conduct. *Id.* Proximate cause is a cause which directly, without mediate agency, produces an effect. *Dale ex rel. Dale v. Edmonds,* 819 S.W.2d 388, 390 (Mo.App.1991). In other words, proximate cause is a cause that operates to produce a particular result without the intervention of a superseding cause. *Id.* The test for proximate cause is whether the injury complained of was the natural and probable consequence of the negligence of the defendant. *State ex rel. Missouri Highway & Transp. Comm'n v. Dierker,* 961 S.W.2d 58, 60 (Mo. *banc* 1998) (*citing Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 710 (Mo. *banc* 1990)).

 In support of its allegation that the appellant had not produced and would not be able to produce sufficient evidence to establish the element of causation as to any of her allegations of specific negligence, the respondent contends that neither she, her family, nor her expert witness could explain what caused her injuries. As such, it argues that she could not show that she would not have been injured but for its allegedly negligent conduct or that her injuries were the natural and probable consequence of

its negligence. A review of the appellant's twenty-three specific allegations of negligence reveals that many of them address the failure of the nursing home to properly complete administrative functions or to take certain steps after bruises were discovered. These things do not establish that she would not have been injured but for this conduct. Further, the appellant, her family, and her expert witness all conceded that they do not know and cannot establish what caused her injuries. As such, the respondent made a *prima facie* case for summary judgment by showing that the appellant had not produced and would not be able to produce sufficient evidence to establish the proof element of causation. *ITT Commercial Fin.,* 854 S.W.2d at 381.

 Having determined that the respondent made a *prima facie* case for summary judgment as on the appellant's claim based on specific negligence, we must determine whether the appellant rebutted the same by showing with "affidavit[s], depositions, answers to interrogatories, or admissions on file" that there is a genuine dispute of material fact, or that under the undisputed facts, the respondent was not entitled to judgment as a matter of law. *Id.* at 381. In her response to the respondent's motion for summary judgment, the appellant alleged that a genuine dispute of material fact existed as to whether the negligence of the respondent caused her injuries. In doing so, she relied on: (1) the deposition testimony of Jack Tieg and Bill Blowers, her sons-in-law, that respondent's employee, Mason,

being abused by another resident; (13) monitor her sufficiently to prevent her from being abused by staff; (14) examine her, after the bruises were brought to its attention, to determine the nature and extent of the bruising; (15) document the bruising in her file; (16) take steps to determine the cause of the bruises including whether they had been caused by falls or by a resident or employee; (17) properly monitor her vital signs after the bruises were discovered; (18) properly investigate the cause of the bruising; (19) document suffi-

ciently the nature of her injuries, prior to her removal, to assist those who might inquire about her injuries; (20) immediately notify the Department of Aging that a "big black man" was potentially abusing her; (21) prevent any person, including but not limited to a "big black man," from "roughing her up"; (22) take precautions after the bruises were discovered on March 12, 1995, to prevent further injury by observing her more closely; and (23) detect and note the bruises on her thighs.

admitted that he had to get "rough" with the appellant in the shower to get her clothes off; (2) her own statements to various people that the nursing home staff was rough with her and ripped her clothes off; and (3) the testimony of some of the nursing home staff that bed rails were never put up as ordered by the appellant's doctor.

We find that the appellant's response was sufficient to rebut the respondent's *prima facie* case for summary judgment on the appellant's claim based on specific negligence in that the deposition testimony referenced, if true, would establish that she was either abused by the staff of the nursing home or fell out of bed due to the failure to put up her bed rails. As such, this evidence would be sufficient to show that she would not have been injured but for the allegedly negligent acts of the respondent and that her injuries were the natural and probable consequence of such acts. And, because the appellant raised a genuine issue of material fact as to whether the alleged negligence of the respondent was both the cause in fact and the proximate cause of her injuries, the trial court erred in granting summary judgment to the respondent on Count I of her petition. *ITT Commercial Fin.*, 854 S.W.2d at 381.

As discussed in Point I, *supra*, summary judgment is not proper on a claim where the non-movant/plaintiff has alleged alternate theories of recovery thereon unless the movant/defendant can establish a right to judgment as a matter of law on each theory properly pled. Rule 74.04(c); *Zafft*, 676 S.W.2d at 244; *Ganaway*, 795 S.W.2d at 556. And, because we hold that the respondent was not entitled to judgment as a matter of law on the appellant's claim for damages for personal injuries based on specific negligence, it was error for the trial court to grant summary judgment on her claim. *Zafft*, 676 S.W.2d at 244; *Ganaway*, 795 S.W.2d at 556.

Because we must reverse and remand for further proceedings, we need not address the appellant's Point III in that the discovery issue raised therein may or may not continue to be an issue requiring review, depending on what subsequent orders the trial court may enter in this respect in light of our opinion.

### Conclusion

For the reasons stated, the summary judgment of the circuit court for the respondent on the appellant's claim for damages for personal injuries is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.