Thelma ROBINSON, et al., Appellants,

v.

MISSOURI STATE HIGHWAY AND TRANSPORTATION COMMISSION, et al., Respondents.

No. WD 56469.

Missouri Court of Appeals, Western District.

April 4, 2000.

Motion for Rehearing and/or Transfer to Supreme Court May 30, 2000.

Application for Transfer Denied Aug. 29, 2000.

Joseph K. Lewis, Jr., Kansas City, Ron L. Findley, St. Joseph, for appellants.

Zachary T. Cartwright, Jefferson City, Wendell E. Koerner, Jr., Keith J. Schieber, St. Joseph, James P. Barton, Jr., G. Edwin Proctor, Jr., Scott R. Gum, Kansas City, for respondents.

Before: ULRICH, P.J., and EDWIN H. SMITH and HOWARD, JJ.

PER CURIAM.

Thelma Robinson, the widow of Richard Robinson, and Tina Robinson and Susan Robinson Little, Mr. Robinson's daughters, appeal the summary judgment of the circuit court for the respondents, Phyllis Hawkins (Hawkins) and Charles and Frances Walton (the Waltons), on their claims for damages for wrongful death, pled on the alternate theories of negligence and public nuisance. Mr. Robinson drowned on September 22, 1993, in floodwater from the 102 River covering B Highway in Andrew County, Missouri. At that time, the Waltons owned two tracts of land contiguous to and east of the 102 River, one to the north and one to the south of B Highway, upon which they had constructed earthen

levees to protect their crops from floodwater from the river. Hawkins owned a tract of land north of and adjacent to the Waltons' property, which was also contiguous to the 102 River and upon which she had also constructed earthen levees to protect her crops from floodwater from the river. The appellants alleged in their petition that the manner in which the respondents had constructed their levees caused the 102 River to flood B Highway on September 22, 1993, directly resulting in Mr. Robinson's death.

The appellants raise three points on appeal. In Point I, they claim that the trial court erred in entering summary judgment for the respondents on the basis that they had not breached a duty of care owed to Mr. Robinson because there was a genuine dispute of material fact as to this issue. In Point II, they claim that the trial court erred in entering summary judgment for the respondents on the basis that any breach by them of a duty of care owed to Mr. Robinson on their part was not the direct and proximate cause of his death because there was a genuine dispute of material fact as to this issue and the respondents were not entitled to judgment as a matter of law on this basis. In Point III, the appellants claim that the trial court erred in entering summary judgment for the respondents on the issue of whether they were entitled to damages for aggravating circumstances because there was a genuine dispute of material fact as to this issue.

We reverse and remand.

### Facts

The 102 River in Andrew County, Missouri, is a non-navigable stream that is capable of being stepped over most of the time. In Andrew County, B Highway runs east from U.S. Highway 71, through the city of Bolckow and to the city of Caywood, for a total distance of approximately eight miles. Approximately one mile west of Bolckow, the highway intersects the 102 River, with a bridge built at that location.

On September 22, 1993, the Waltons owned two tracts of land contiguous to and east of the 102 River, one to the north of B Highway, consisting of approximately 200 acres, and one to the south of the highway, consisting of approximately 150 acres. Sometime in the 1980's, the Waltons constructed earthen levees on both tracts of their land. Hawkins owned approximately 80 acres of land north and adjacent to the Waltons' property, also contiguous to the 102 River. At some point, she constructed earthen levees on the north, south, and west sides of her property. The northwest corner of the levee on the Waltons' property north of the highway tied into the southwest corner of Hawkins's levee. North of Hawkins's property, Lawrence and Lorraine Bennett (the Bennetts) and the Lawrence Bennett Trust owned approximately 102 acres of land, also contiguous to the 102 River. Levees similar to those on the Waltons' and Hawkins's properties were constructed on the Bennett property. P.M. Land Company owned a tract of land west of the 102 River and the Walton property south of B Highway, abutting the highway, where levees also had been built.

The levees on these tracts of land were built to protect crops by channeling floodwater from the 102 River away from the land. The levees on the respondents' land north of B Highway were constructed at approximately twelve feet in height, which was higher than the grade of B Highway. During the spring of 1993, these levees were partially breached by flooding which eroded their height by about two feet, after which they provided an average storage depth of ten feet of water. In September 1993, the height of the respondents' levees both north and south of B Highway were at higher elevations than the grade of the highway. These levees were not part of a county levee district.

At approximately 4:00 to 4:10 a.m. on September 22, 1993, Mr. Robinson left for work from his home in Bolckow and trav-

eled west on B Highway in his 1982 Buick Century. It had been raining for several hours at that point, and B Highway near the 102 River had become impassable due to floodwater from the river. Sometime soon thereafter, Ray Knoth discovered Mr. Robinson's vehicle, facing south with its front end toward the ditch just east of the 102 River bridge on B Highway. Mr. Robinson's vehicle's ignition and lights were off, and the keys had been removed. From the position of the vehicle, it appeared that Mr. Robinson had been attempting to turn his vehicle around on the highway to head back east. Floodwater was up to the running boards of his vehicle. Mr. Knoth found Mr. Robinson outside his vehicle and lying on his abdomen on the highway, approximately ten to fifteen feet from his vehicle, with three to four inches of water covering his mouth and nose. He checked for Mr. Robinson's pulse but found none and removed his body from the water. He instructed another motorist to call for help and tried, unsuccessfully, for five to ten minutes to resuscitate Mr. Robinson with CPR. While doing so, he observed some water coming from his mouth. Emergency medical personnel arrived on the scene at 5:37 a.m. At that time Mr. Robinson had no pulse and was not breathing. His pupils were dilated, and he was unresponsive. The only obvious trauma to Mr. Robinson was an abrasion above his left eye and an abrasion on his nose. He was later pronounced dead at the scene by the Andrew County coroner and transported to a funeral home in nearby Savannah, Missouri.

Later that day, Dr. Bonita Peterson performed an autopsy on Mr. Robinson and concluded that the cause of his death was drowning. According to Dr. Peterson, Mr. Robinson experienced an irregular heartbeat that morning, a condition known as cardiac arrhythmia. In Dr. Peterson's opinion, had Mr. Robinson not found himself in the shocking situation of driving into floodwater on the highway, he would not have experienced cardiac arrhythmia. She testified that he was alive at the time he fell into the water.

On the morning of September 22, 1993, Mr. Robinson's Buick Century was in good operating condition. Following his death, the vehicle was towed to an automobile dealership lot in Savannah. That afternoon, Mr. Robinson's son-in-law, Jim Miller, went to Savannah to retrieve the vehicle. At that time, the vehicle was inoperable, and he observed that there was water in the vehicle's floorboards. He towed the vehicle to Bolckow. Upon arriving in Bolckow, he inspected the vehicle's engine and found water lying on top of it. He also found water in the crankcase and the transmission. Because water had gotten into the vehicle's engine, it could not be started.

On September 6, 1996, the appellants filed their first amended four-count petition for wrongful death in the Circuit Court of Buchanan County, Missouri, naming as defendants the Missouri State Highway and Transportation Commission (the Commission); P.M. Land Company; David Potter, who was an employee of P.M. Land Company; the Bennetts; the Lawrence Bennett Trust; and the respondents.[1] In Count I, they sought damages against the Commission on the basis that it had "failed to place warning signs and/or lights along B Highway and/or it failed to close the roadway to traffic when they knew or in the existence of ordinary care should have known of the [impassable road] in sufficient time prior to Richard Robinson's death to have taken measures to protect against such conditions." In Counts II and III, they sought damages against all the defendants for Mr. Robinson's wrongful death based on alternative theories of negligence and public nuisance. The appellants alleged that the design, construction, and maintenance of the levees on the land in the area of the 102 River and B Highway caused or contributed to the flooding of the highway on the morning of

1. The appellants' original petition is not included in the record on appeal.

September 22, 1993, causing Mr. Robinson's death. In Count IV, they sought aggravating circumstance damages against all the defendants.

On or about July 20, 1998, the Waltons filed a second motion for summary judgment, and Hawkins also filed her own second motion for summary judgment.[2] In the motions, they alleged that there were no genuine disputes of material fact and they were entitled to judgment as a matter of law. Specifically, they alleged that their diversion of floodwater from their land through the use of levees was reasonable such that they did not breach a duty of care owed to Mr. Robinson. They further alleged that the appellants could not establish causation as to their negligence or nuisance theories. On August 17, 1998, the appellants filed their response to the respondents' motions for summary judgment. On September 25, 1998, the trial court sustained the respondents' motions for summary judgment and, pursuant to Rule 74.01(b),[3] certified that there was no just reason for delay of an appeal as to its grant of summary judgment.

This appeal follows.

### Standard of Review

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted).

Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380.

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

### Discussion

■ The appellants' wrongful death claims were pled on the alternate theories of negligence and public nuisance. "[W]here, as here, the non-movant/plaintiff[s'] petition alleges alternate theories of recovery on the same claim, summary judgment on the claim is not proper unless the movant/defendant[s] can establish a case for summary judgment on each theory pled." *Guffey v. Integrated Health Servs.*, 1 S.W.3d 509, 517 (Mo.App.1999). Thus, if we find that summary judgment for the respondents was improper as to either theory of recovery pled by the appellants, we must reverse and would not be required to determine if the court also erred in awarding summary judgment on the alternate theory pled. Because we find that the trial court's award of summary judgment was improper as to the appellants' wrongful death claims based on a theory of negligence, we address the appellants' claims on appeal in that context only.

### I. Negligence—Breach of Duty

■ In Point I, the appellants claim that the trial court erred in entering sum-

---

2. The Waltons' and Hawkins's first motions for summary judgment are not included in the record on appeal.

3. All rule references are to the Missouri Rules of Civil Procedure (1998), unless otherwise indicated.

mary judgment for the respondents on their wrongful death claims pled on a theory of negligence on the basis that they had not breached their duty of care owed to Mr. Robinson because there was a genuine dispute of material fact as to this issue in that there was a dispute as to whether the respondents' diversion of floodwater from their land, in order to protect their crops by means of constructing levees, was unreasonable. We agree.

Under Rule 74.04, to be entitled to summary judgment, the respondents, as the movants, were required to show that: (1) there was no genuine dispute as to the material facts on which they relied to recover and had the burden of persuasion at trial; and (2) on these undisputed facts, they were entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin. Corp.*, 854 S.W.2d at 380–81. If the movant for summary judgment is a defending party, as in the present case, a *prima facie* case for summary judgment may be established by one or more of the following means: (1) showing undisputed facts that negate any one of the claimants' required proof elements; (2) showing that the claimants, after an adequate period of discovery, have not produced and would not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimants' required proof elements; or (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support an affirmative defense properly pleaded by the movant. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *Id.*

■ To succeed on their wrongful death claims against the respondents on a theory of negligence, the appellants were required to show that: (1) the respondents owed a duty of care to Mr. Robinson; (2) they breached that duty; (3) the breach was the cause in fact and proximate cause of his death; and (4) as a result of the breach, he suffered damages. *Green v. Unity Sch. of Christianity*, 991 S.W.2d 201, 204 (Mo. App.1999); *Brickey v. Concerned Care of the Midwest, Inc.*, 988 S.W.2d 592, 596 (Mo.App.1999); *Knop v. Bi–State Dev. Agency*, 988 S.W.2d 586, 589 (Mo.App. 1999). In their motions for summary judgment, the respondents, as defending parties, employed the first means for making a *prima facie* case for summary judgment by alleging facts which they asserted were undisputed and negated the second and third required proof elements of the appellants' wrongful death claims based on negligence. In this point, we address the issue of whether the respondents negated, with undisputed facts, as they contend, the second required proof element of the appellants' negligence claims, a breach of duty. In this respect, the respondents alleged that they did not breach their duty of care to Mr. Robinson because their diversion of floodwater from their land through the use of levees was reasonable.

■ In Missouri, floodwater from a river or stream is treated as surface water. *Brown v. H & D Duenne Farms, Inc.*, 799 S.W.2d 621, 628 (Mo.App.1990). Historically, in cases involving the liability of landowners for damage or injury caused by their diversion of surface water from their property, Missouri courts applied the modified common enemy doctrine. *Heins Implement Co. v. Missouri Highway & Transp. Comm'n*, 859 S.W.2d 681, 686 (Mo. *banc* 1993). Under this doctrine, "upper landowners [might have been] required to act with *some* degree of care when discharging surface water onto lower-lying lands." *Id.* at 687. However, "lower owners ... retained considerable freedom in blocking the flow of surface water onto their lands, subject only to the proviso that they [could] not dam a natural drainway." *Id.* Thus, under this doctrine, a duty of care was "imposed only on upper owners seeking to discharge collected wa-

ter onto lower owners, and never on lower owners who [had] merely dammed surface water to keep it away from their own property." *Id.*

In *Heins,* the Missouri Supreme Court held that the modified common enemy doctrine was "unduly complicated and confusing and threaten[ed] arbitrary and unjust results." *Id.* at 690–91. As a result, it abrogated the doctrine and, in its stead, adopted the rule of reasonable use. *Id.* at 691; *Missouri Highway & Transp. Comm'n v. Rockhill Dev. Corp.,* 865 S.W.2d 765, 768 (Mo.App.1993). The rule of reasonable use "does not purport to lay down any specific rights or privileges with respect to surface waters, but leaves each case to be determined on its own facts, in accordance with general principles of fairness and common sense." *Heins Implement Co.,* 859 S.W.2d at 689. "The greatest virtue of the reasonable use standard is its ability to adapt to any set of circumstances while remaining firmly focused on the equities of the situation." *Id.* at 690.

Under the rule of reasonable use, " 'each possessor [of land] is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable.' " *Id.* at 689 (quoting *Armstrong v. Francis Corp.,* 20 N.J. 320, 120 A.2d 4, 8 (N.J.1956)). "Reasonableness is a question of fact, to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the defendant's conduct." *Id.* "Liability arises when the defendant's conduct is either (1) intentional and unreasonable; or (2) negligent, reckless, or in the course of an abnormally dangerous activity." *Id.* at 689–90. Thus, in determining the issues presented, under the rule of reasonable use, we must weigh the utility of the respondents' actions in constructing and maintaining levees at a height greater than that of B Highway in order to protect their crops from floodwater from the 102

River against the danger created thereby to motorists traveling on the highway and the gravity of harm that could befall them when water from the 102 River flooded the highway. *Id.*

In claiming that their diversion of surface water from their land was reasonable such that they did not breach their duty of care owed to Mr. Robinson, the respondents alleged in their summary judgment motions that:

It is undisputed that at least on a yearly basis the water reached the height of the highway in this case. Levees built to a height lower than the highway would of course be ineffectual against floods of that height. As a matter of law, the defendant landowners were putting their land to a reasonable use when they constructed levees to protect their farmland since the levees were not constructed within the natural watercourse and did not collect and discharge destructive quantities of water.

Even assuming, *arguendo,* that the respondents made a *prima facie* case for summary judgment based on these allegations with respect to a lack of a breach of duty, we find that the motions were improvidently granted on this basis in that we find that the appellants rebutted the same, as discussed, *infra.*

Once a *prima facie* case is made for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the party's pleading, but the response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). In his or her response, the non-movant is required "to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. If such a showing is not made by the non-movant, judgment is

proper for the movant. *Id.* at 382. A "genuine issue" exists where the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.*

To defeat summary judgment for the respondents based on their allegation that on the undisputed facts they did not breach their duty to Mr. Robinson, the appellants, in their response to the respondents' motions for summary judgment, alleged that there was evidence from which it could be reasonably inferred that the respondents, in constructing and maintaining their levees as they did, did not divert surface water from their land in a reasonable manner. In so alleging, the appellants did not contend that the respondents' construction and maintenance of levees to protect their crops from floodwater could not be a reasonable use of their land. Instead, what they alleged was that the manner in which the respondents diverted floodwater from their land, by constructing and maintaining levees at a grade higher than that of B Highway, was not reasonable in that such actions posed a foreseeable and unreasonable risk of harm to human life. In so contending, they relied, *inter alia,* on the affidavits of Jim and Brenda Miller.

Jim Miller grew up in the Bolckow area and, as an adult, regularly visited family in the area. Brenda Miller lived in and/or visited the Bolckow area on a weekly basis between 1973 and 1983. Both were familiar with the area where B Highway and the 102 River meet before levees were built on the surrounding land. In both of their affidavits, they stated, *inter alia,* that: (1) B Highway became impassable due to floodwater from the 102 River more often after the levees in question were built than it did before; and (2) after the levees were built, any floodwater on the highway was much deeper than before. Jim Miller further stated in his affidavit that: (1) B Highway was the main thoroughfare through the cities of Bolckow and Caywood as well as the most direct route from these cities to U.S. Highway 71 and was frequently traveled by the motoring public; (2) after the levees were raised to a height above the grade of the highway, floodwater topped the highway long before it topped the levees; and (3) the highway flooded much faster than before the levees were raised.

To defeat the respondents' motions for summary judgment, the appellants further relied on the deposition testimony of Cecil Smith, a farmer from the Bolckow area who was familiar with the respondents' land. In his deposition, Mr. Smith testified that, prior to levees being built on the Bennett property, located north of the respondents' properties, there were a few times the Bennetts would lose crops due to flooding from the river but, even at those times, only the crops located "right next to the river" were lost. The appellants also relied on the affidavit and deposition testimony of Wayne Williams, a licensed professional engineer. In his deposition, Mr. Williams testified that, if the levees in question had been built at an elevation lower than that of the grade of the highway, they still would have protected the crops on the respondents' land from floodwater nine out of every ten years. In his affidavit, he stated that the levees in question were a cause of the highway being impassable at the time of Mr. Robinson's death on September 22, 1993, and that, if the levees north of the highway had been maintained at an elevation equal to that of the highway, floodwater would not have topped the highway, making it impassable, until approximately 7:15 to 7:30 a.m. that morning.

Overriding principles of fairness and common sense dictate that the protection of human life is far more important than the protection of crops from occasional floodwater. In fact, it is inherent in the law that life is valued over property and that individuals are not allowed to protect their property in such a way that there is

posed an unreasonable and substantial risk to human life. In this context, and viewing the above evidence in the light most favorable to the appellants, *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376, we find that they demonstrated that there was a genuine dispute of material facts as to whether the respondents' diversion of surface water from their land and onto B Highway, through the use of their levees built and maintained at a height greater than that of B Highway, was reasonable when the utility of such a use is weighed against the gravity of loss of human life. Hence, we find that the trial court erred in sustaining the respondents' motions for summary judgment on the basis that they had not breached their duty of care to Mr. Robinson.

Having determined that summary judgment for the respondents was not proper with respect to whether there was breach by the respondents of the duty of care owed to Mr. Robinson on the appellants' claims for wrongful death pled on a theory of negligence does not end our inquiry in that, as discussed, *supra*, the respondents would have been entitled to summary judgment on this theory of recovery if any element of the appellants' proof elements could not, under the undisputed facts and as a matter of law, be established. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. As such, we must still determine, in Point II, whether the respondents were entitled to summary judgment with respect to their assertion that, on the undisputed facts, the third proof element, causation, of the appellants' wrongful death claims pled on a theory of negligence was negated.

## II. Negligence—Causation

In Point II, the appellants claim that the trial court erred in sustaining the respondents' motions for summary judgment on the basis that any breach by them of their duty of care owed to Mr. Robinson was not the direct and proximate cause of his death because there was a genuine dispute of material fact as to this issue and the re-spondents were not entitled to judgment as a matter of law. Specifically, they claim that the trial court erred in sustaining the respondents' motions for summary judgment on this basis because: (1) the appellants rebutted the respondents' *prima facie* case on the issue of whether any negligence on their part in constructing and maintaining the levees, thereby diverting floodwater from their land and onto the highway, was the cause, in fact, of Mr. Robinson's drowning death; and (2) the respondents failed to make a *prima facie* case on the issue of whether their negligence was its proximate cause.

 As discussed, *supra*, to recover on a theory of negligence, the appellants were required to show not only that the respondents had a duty of care to Mr. Robinson, which they breached, but also that the breach of that duty was the cause of his death. *Green*, 991 S.W.2d at 204; *Brickey*, 988 S.W.2d at 596. "It is axiomatic that the mere fact that injury follows negligence does not necessarily create liability." *Simonian v. Gevers Heating & Air Conditioning, Inc.*, 957 S.W.2d 472, 474 (Mo.App.1997). "In order to prove a causal connection to establish negligence, the plaintiff must show both causation in fact and proximate cause." *Guffey*, 1 S.W.3d at 518. The trier of fact normally decides causation, *Simonian*, 957 S.W.2d at 475; *Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928, 936 (Mo.App.1996), especially where reasonable minds could differ as to causation on the facts of the case. *Linton v. Missouri Highway and Transp. Comm'n*, 980 S.W.2d 4, 9 (Mo.App.1998).

 "A defendant's conduct is the cause in fact of a plaintiff's injuries where the injuries would not have occurred but for that conduct." *Guffey*, 1 S.W.3d at 518. "Proximate cause is not causation in fact, but is a limitation the law imposes upon the right to recover for the consequences of a negligent act." *Simonian*, 957 S.W.2d at 475. "The requirement of proving proximate cause absolves those actors whom it would be 'unfair' to punish

because of the attenuated relation which their conduct bears to the plaintiff's injury." *Id.* Thus, proximate cause

"requires something in addition to a 'but for' causation test because the 'but for' causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage."

*State ex rel. Missouri Highway and Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. *banc* 1998) (*quoting Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 865 (Mo. *banc* 1993)).

 The general test of proximate cause is "whether an injury is the natural and probable consequence of the defendant's negligence." *Stanley v. City of Independence*, 995 S.W.2d 485, 488 (Mo. *banc* 1999). "This is determined by looking back, after the occurrence, and examining whether the injury appears to be a reasonable and probable consequence of the conduct." *Jones v. Trittler*, 983 S.W.2d 165, 168 (Mo.App.1998). " '[F]rom the essential meaning of proximate cause arises the principle that in order for an act to constitute the proximate cause of an injury, *some* injury, if not the precise one in question, must have been reasonably foreseeable.' " *Hansen v. James*, 847 S.W.2d 476, 481 (Mo.App.1992) (*quoting Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. *banc* 1990) (citations omitted)). "Foreseeability is not a matter of mathematical certainty. No event is entirely foreseeable." *Shannon v. Wal–Mart Stores, Inc.*, 974 S.W.2d

588, 591 (Mo.App.1998). As such, the test for proximate cause "is not whether a reasonably prudent person would have foreseen the particular injury, but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant." *Simonian*, 957 S.W.2d at 475. "It is only necessary that the party charged knew or should have known there was an appreciable chance some injury would result." *Jones*, 983 S.W.2d at 168. "The defendant's negligence need not be the sole cause of the injury; it must be one of the causes without which the injury would not have occurred." *Id.* "It is sufficient that it be one of the efficient causes thereof, without which the injury would not have occurred." *Simonian*, 957 S.W.2d at 475.

 As to cause in fact, even assuming, *arguendo*, that the respondents made a *prima facie* case for summary judgment on this basis, we find that their motions were improvidently granted on this basis in that the appellants sufficiently rebutted the same.[4]

To defeat summary judgment for the respondents based on their allegation that they had negated the appellants' proof element of cause in fact, the appellants, in their response, alleged that there was evidence from which it could reasonably be inferred that Mr. Robinson's drowning death on September 22, 1993, would not have occurred but for the respondents' acts in constructing and maintaining the levees in the manner in which they did and diverting floodwater from their land onto

---

**4.** It appears that, in the respondents' motions for summary judgment, they did not claim that any negligence on their part was not the cause in fact of Mr. Robinson's death but, instead, focused on whether their acts were the proximate cause of his death. On appeal, the respondents do make the claim that any negligence on their part in constructing the levees and diverting floodwater from the 102 River onto B Highway was not the cause in fact of Mr. Robinson's death. Normally, because this issue is raised for the first time on

appeal, it would not be preserved for appellate review, and we would not consider it. *Landvatter Ready Mix, Inc. v. Buckey*, 963 S.W.2d 298, 303 (Mo.App.1997). However, because "[a]n order of summary judgment will not be set aside on review if supportable on any theory," provided that undisputed facts supporting that theory are properly before the court, we can address the merits of this claim on appeal. *City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. *banc* 1995).

the highway. In so alleging, they relied, *inter alia*, on the affidavit and deposition testimony of Wayne Williams. As discussed, *supra*, in his affidavit, Mr. Williams stated that the levees in question were a cause of B Highway being impassable at the time of Mr. Robinson's death on September 22, 1993, and that, if the levees north of the highway had been maintained at an elevation equal to that of the highway, floodwater would not have topped the highway, making it impassable, until approximately 7:15 to 7:30 a.m. that morning, long past the time when Mr. Robinson would have been traveling on the highway at that location. The appellants also relied on the deposition of Dr. Bonita Peterson. In her deposition, she testified that the cause of Mr. Robinson's death was drowning and that he was alive at the time he fell into the floodwater on the highway.

■ Viewing the affidavit and deposition testimony of Williams and Dr. Peterson in the light most favorable to the appellants, *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376, we find that they demonstrated that there was a genuine dispute of material facts as to whether Mr. Robinson's death would not have occurred on September 22, 1993, but for the respondents' construction and maintenance of their levees and subsequent diversion of floodwater from their land onto the highway. Hence, the respondents were not entitled to summary judgment on this basis. This determination does not end our inquiry, however, in that, as discussed, *supra*, in order to prove causation, the appellants were also required to put in dispute whether the respondents' negligence was the proximate cause of his death. As such, we must still determine whether the respondents were entitled to summary judgment in that the undisputed facts established that any negligence on their part was not the proximate cause of Mr. Robinson's death.

■ In support of their assertion that any negligence on their part was not the proximate cause of Mr. Robinson's death, the respondents alleged that:

[t]here were numerous intervening resulting causes in this case.... The alleged negligent construction of a levee is simply too far removed from this injury. In order for this incident to occur, an act of God (a rainstorm) had to occur. The state highway department had to fail to barricade the road. The deceased had to drive into the water. He then had to get out of his vehicle. The numerous other levees in the area owned by other defendants and non-defendants cannot be disregarded. This long and attenuated sequence simply cannot support liability against individual landowners like [the respondents.] ... [T]he ... levee[s], at most, created a circumstance under which the injury occurred.... If the ... levee[s] contributed to the flood at all, this action cannot be the proximate cause of a death of a motorist who drove in a flooded area, then exited his vehicle.

Although the trial court agreed with the respondents that there were numerous intervening resulting causes of Mr. Robinson's death such that any breach by them of their duty of care owed to him was not the proximate cause of his death, we disagree.

■ The respondents are correct in their contention that "[a]n event that interrupts the actions caused by [their] negligence may be an intervening resulting cause, which is a new and independent event that becomes the 'responsible, direct, proximate cause of the injury.'" *Stroot v. Taco Bell Corp.*, 972 S.W.2d 447, 449 (Mo. App.1998) (*quoting Vann v. Town Topic, Inc.*, 780 S.W.2d 659, 661 (Mo.App.1989)). "An intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury, but it may not consist of an act of concurring or contributory negligence." *Simonian*, 957 S.W.2d at 475. "However, the mere existence of an

intervening act is not decisive. The intervening act must be a superseding cause that is independent of the original actor's negligence and severs the connection between the original actor's conduct and the plaintiff's injury as a matter of law." *Buchholz v. Mosby–Year Book, Inc.*, 969 S.W.2d 860, 862 (Mo.App.1998). "For an intervening act to relieve the original tortfeasor from liability, the act cannot be a foreseeable consequence of the original act of negligence." *Id.* Thus, "[w]here concurrent or successive negligence combined together results in injury, ... neither [party] can use the defense that the prior occurrence or negligence of the other contributed to the injury." *Tillman by Tillman v. Elrod,* 897 S.W.2d 116, 118 (Mo. App.1995).

In our view, any negligence, as alleged by the respondents, on the part of the Highway Commission, Mr. Robinson, and other area landowners would be no more than acts of concurrent negligence and, as such, would not relieve the respondents of liability for their own negligent acts in constructing and maintaining their levees and diverting floodwater from their land onto B Highway. *Simonian,* 957 S.W.2d at 475. The facts alleged by the respondents on the part of these actors, even if undisputed, were not independent of the respondents' own negligence but, instead, combined together therewith in leading to Mr. Robinson's drowning death at approximately 4:10 a.m. on September 22, 1993. Any immediate cause of Mr. Robinson's death, such as the Highway Commission's failure to barricade the highway or his own acts in driving into the floodwater and exiting his vehicle, was directly dependent on and related to the alleged acts of negligence on the part of the respondents in constructing and maintaining the levees and diverting water onto the highway. As such, the alleged negligent acts of the

Highway Commission, Mr. Robinson, and other area landowners were not superseding causes that independently caused his death and severed the connection between the respondents' acts and his injury.

■ As to the respondents' claim that an act of God, a rainstorm, was also an intervening resulting cause of Mr. Robinson's death, cutting off any liability on their part, we disagree. "Any negligence on the part of the [respondents] which concurred with the Act of God as the proximate cause of the accident would reinstate [their] responsibility." *Arthur v. Royse,* 574 S.W.2d 22, 23–24 (Mo.App. 1978). " 'When the result in part is ascribable to the participation of man, either through active intervention or neglect or failure to act, "the whole occurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God." ' " *Id.* at 24 (*quoting Kennedy v. Union Elec. Co.,* 358 Mo. 504, 216 S.W.2d 756, 763 (*banc* 1948) (citations omitted)). As such, the fact that the rainstorm on September 22, 1993, was an act of God did not relieve the respondents of their liability for any acts of negligence on their part in constructing and maintaining their levees.

■ Viewing the evidence in this case in the light most favorable to the appellants, *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376, we find that it is reasonably foreseeable that a motorist could drive into floodwater on a highway in the dark, be forced to exit his or her vehicle because the floodwater had made it inoperable, and then drown in the floodwater. Thus, the respondents failed to allege undisputed facts in their motions for summary judgment establishing that Mr. Robinson's death was not a reasonable and probable consequence of their conduct such that they could not be liable for his death.[5] As

5. On appeal, the respondents make the claim that any negligence on their part was not the proximate cause of Mr. Robinson's death because it was not reasonably foreseeable that a person would drive into the floodwater on the

highway and then suffer an attack of cardiac arrhythmia causing him or her to fall into the floodwater and drown. In their motions for summary judgment, the respondents failed to state with particularity any material facts re-

such, summary judgment for the respondents on the basis that Mr. Robinson's death was not a reasonable and probable consequence of their conduct was improper.

Having determined that the respondents were not entitled to summary judgment as to the appellants' wrongful death claims based on a theory of negligence, we need not determine if they were entitled to summary judgment as to their claims based on a theory of public nuisance inasmuch as, because the appellants' claims were pled on the alternative theories of negligence and public nuisance, summary judgment on their claims was not proper unless the respondents established a case for summary judgment on each theory. *Guffey*, 1 S.W.3d at 517. Thus, because we find the trial court's award of summary judgment was improper as to the appellants' wrongful death claims based on a theory of negligence, we need not address whether summary judgment for the respondents was proper on a theory of public nuisance.

### III.

■ In Point III, the appellants claim that the trial court erred in entering summary judgment for the respondents as to the appellants' request for damages for aggravating circumstances because there was a genuine dispute of material fact as to this issue in that on the facts alleged there was a dispute as to whether the respondents knew or had reason to know a high degree of probability existed that their actions would result in injury such as Mr. Robinson's. However, before we can address the merits of this issue, we are first required to determine, *sua sponte*, our jurisdiction to do so. *Garrett v. Finnell*, 999 S.W.2d 304, 305 (Mo.App.1999).

lating to Mr. Robinson's cardiac arrhythmia, as required by Rule 74.04(c)(1). A trial court grants or denies motions for summary judgment on the basis of what is contained in the motions and, as an appellate court, we are confined to considering the same information. *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 85 (Mo.App.1999). Because

In this regard, for the reasons discussed, *infra*, we dismiss this claim due to a lack of jurisdiction.

■ Under Missouri law, in wrongful death actions, damages for aggravating circumstances, which are the "equivalent of punitive damages," are recoverable. § 537.090; *Call v. Heard*, 925 S.W.2d 840, 849 (Mo. banc 1996); *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 164 (Mo. App.1997). However, " '[a] finding of liability is a prerequisite to a finding of damages' " such that " 'a determination of damages cannot survive independent of the accompanying determination of liability.' " *McHaffie by McHaffie v. Bunch*, 891 S.W.2d 822, 827–28 (Mo. banc 1995) (*quoting Barlett by Barlett v. Kansas City S. Ry. Co.*, 854 S.W.2d 396, 403 (Mo. banc 1993)).

■ In this case, for reasons not readily apparent from the record, the trial court, after ruling in favor of the respondents on the issue of liability as to the appellants' claims for wrongful death, rendering moot the issue of whether they were entitled to damages thereon, either compensatory or punitive, nonetheless proceeded to address and rule for the respondents on their motions for summary judgment with respect to the partial issue of punitive damages. We can only assume that what the trial court was attempting to do was obtain an advisory opinion on this issue in the event we reversed and remanded on the issue of liability, as we do. Although efforts of judicial economy are very much appreciated, we are not authorized to issue advisory opinions. *Armstrong v. Elmore*, 990 S.W.2d 62, 64 (Mo. App.1999).

the respondents failed to allege material facts relating to Mr. Robinson's cardiac arrhythmia in their motions, such information was not considered by the trial court in ruling on the respondents' motion and cannot be considered by this court in determining the propriety of the trial court's summary judgment for the respondents.

The trial court's ruling as to the issue of punitive damages was totally extraneous to its ruling on the issue of liability, which completely disposed of the appellants' claims against the respondents. Viewed in its essence, what the trial court did here was to enter, in effect, alternative judgments contingent on the possible actions of this court on appeal, one of which was final and appealable and the other was not. The judgment with respect to punitive damages, standing alone, which it must, inasmuch as it was not a part of the trial court's summary judgment finding no liability on the part of the respondents, would not constitute a final judgment from which an appeal would lie, but would, at best, constitute a partial summary judgment in that it does not dispose of one full claim as to one party. *Moreland v. Farren–Davis,* 995 S.W.2d 512, 516 (Mo.App. 1999). The fact that the trial court certified its judgment, under Rule 74.01(b), stating that there was "no just reason for delay," did not change the status of its ruling on the issue of punitive damages. *Pen–Yan Inv., Inc. v. Boyd Kansas City, Inc.,* 952 S.W.2d 299, 308 (Mo.App.1997). The language of Rule 74.01(b) is not a magic wand that will allow an expedited appeal where a full claim as to at least one party has not been determined, as would be the case here, where the issue of liability has been placed back in dispute by our decision on appeal. *Id.* In addition, from a practical standpoint, given the fact that this case must be remanded for trial, as discussed, *supra,* facts as to the issue of punitive damages may yet be developed by the appellants which would cause the trial court to change its ruling with respect to this issue, rendering premature any present appeal of the same.

For the reasons stated, we dismiss the appellants' claim in Point III due to a lack of jurisdiction.

## Conclusion

The summary judgment of the circuit court for the respondents on the appellants' claims for damages for wrongful death with respect to the issue of liability is reversed, and the cause is remanded for further proceedings consistent with this opinion. As to the issue of damages for aggravating circumstances on the appellants' claims, the appeal is dismissed for a lack of jurisdiction, the court having found that the trial court's judgment with respect thereto is not final for purposes of appeal.